689 N.E.2d 712 (1997)
Lee ORR, Alfred Smith, and William R. Robinson, Appellants/Respondents (Plaintiffs Below),
v.
WESTMINSTER VILLAGE NORTH, INC., Appellee/Petitioner (Defendant Below).
No. 49S02-9602-CV-128.
Supreme Court of Indiana.
December 15, 1997.
*714 Eric D. Johnson, Kightlinger & Gray, Indianapolis, for Appellants/Respondents.
Patrick Miller, Patrick F. Mastrian, III, Goodin & Kraege, Indianapolis, for Appellee/Petitioner.
D. Reed Scism, Barnes & Thornburg, Indianapolis, for Amicus Curiae The Indiana Legal Foundation.

*713 ON PETITION TO TRANSFER
SELBY, Justice.
Westminster Village North, Inc., appellee/petitioner and defendant below ("Westminster" or "defendant"), challenges the decision of the Court of Appeals, 651 N.E.2d 795 (Ind.Ct.App.1995), holding that Westminster's employee handbook ("Handbook") created a material issue of fact as to whether Westminster breached an employment contract and wrongfully discharged Lee Orr, Alfred Smith, and William Robinson, appellants/respondents and plaintiffs below ("plaintiffs"). In so doing, the Court of Appeals reversed the decision of the trial court which granted Westminster's motion for summary judgment on the breach of contract claim.[1] We disagree with the Court of Appeals. We decline to construe the employee handbook at issue as a valid unilateral contract or to abolish the rule which generally requires the employee to provide adequate independent consideration to convert an employment-at-will relationship into a relationship that the employer can terminate only for good cause. We conclude that, even if we were to adopt an exception to the employment-at-will doctrine for employee handbooks, the employee handbook in this case, as a matter of law, does not create an employment contract which alters the otherwise at-will employment status of plaintiffs. We, therefore, reverse the Court of Appeals and reinstate the trial court's decision granting summary judgment in Westminster's favor.

FACTS
Westminster operates a retirement community, which consists of several buildings located on twenty-seven to thirty acres of land in Indianapolis. Westminster employed plaintiff Lee Orr as the grounds foreman or head grounds keeper. Plaintiffs Alfred Smith and William Robinson worked under Orr's direction. On the afternoon of March 22, 1990, Kevin Strunk, the Director of Maintenance, who had oversight responsibility for all buildings and grounds and who was Orr's *715 immediate supervisor, gave the fire chief and six to eight firefighters from the Lawrence Fire Department a tour of the Westminster facilities. When the group reached the attic of Building A at about 3:00 or 3:30 p.m., Strunk noticed that the door to the attic was ajar about three inches and the piece of wood that usually fastened the door closed was lying on the floor. When the group entered the attic, the light was on and there was a cloud of smoke. Strunk and other members of the group detected an odor of marijuana. The group then separated and walked around the attic. Strunk walked along the catwalk in the east wing and saw Orr hiding in the corner of the attic and signaling him to go back to the main common area. The group then left the attic to call security. Strunk went back down the center stairwell, the only stairwell accessing the attic, to the first floor. Several firefighters remained behind.
When Strunk returned a few minutes later with Bob Rayne, the Director of Security, they entered the attic with the fire chief and a couple of fire personnel. At that time neither Orr nor anyone else was in the attic. The hatch which opens onto the roof, which is only accessible through the attic, was open, and Strunk saw plaintiffs on the roof. According to Strunk, Orr and Smith were walking away from him on the very top of the sloped roof. After Strunk made two requests that the plaintiffs come down from the roof, they complied and, in response to questions, they all denied smoking in the attic. They maintained that maintenance foreman Gordon Counceller, who, like Orr, reported to Kevin Strunk and who also is Orr's uncle, had instructed them to clean pigeon droppings from the gutters of the building.
Westminster immediately conducted a brief investigation and concluded that plaintiffs had no business being in the attic or on the roof that day. They had no safety equipment with them for scaling the sloped roof, which Strunk maintained was wet at the time, and no one saw any equipment with them for removing pigeon droppings. Westminster terminated plaintiffs the same day. Although Westminster suspected that they had been smoking marijuana, Westminster terminated them for being in an unauthorized area and also for endangering safety and life in violation of major offense number 4 which is listed in Section V.M. of the Handbook.
Four or five days after the incident, when Strunk questioned Counceller about whether he had told Lee and his men to inspect or do work on the roof that day, he said, "well, what if I did tell them." Strunk did not get a definite answer from Counceller who then went on to simply state that he "may have" asked Orr to inspect or do work on the roof. (R. at 366-68.) Later, at Counceller's deposition, he did say that, earlier in the week of March 22, he had asked his nephew Lee Orr to clean the gutters, and Orr had advised him that it had been scheduled. He also testified that he and others had occasion to be in the attic, because it was a storage area; that no signs saying that it was an unauthorized area or prohibiting smoking were posted until after the incident; that he and others smoked cigarettes in the attic; that there was no requirement for using safety equipment while on the roof; and that they would need a garden tool and generally a hose to clean out the gutters, but would not need any tools simply to inspect the gutters. Plaintiff Smith testified at his deposition that no safety equipment was needed on the roof in question; that, as far as he could determine, the roof was dry on the day of the incident; that he had a garden hand shovel in his back pocket and believes Orr and Robinson had similar tools as well. Plaintiff Orr testified that he was on the east incline of Building A finishing up cleaning out the gutters when he was called off the roof, and that he and his co-workers all had hand shovels, but no other equipment.
Plaintiffs contend that they were wrongfully discharged because Westminster did not follow the disciplinary procedures set out in the Handbook. The contents of that Handbook are not in dispute. In the first few pages of the Handbook issued October 1988, under Section I.B. captioned "Purpose and Use of the Handbook," the following statement appears: "Its contents represent an official statement of the facility policy; however, the handbook is not a contract with the *716 facility because it is subject to change." (R. at 18; emphasis added.)
The Handbook also contains numerous other provisions covering standards of conduct, policies and procedures, and benefits. Among these is Section II.M., captioned "Employee Disciplinary Guidelines and Grievances Procedure," which provides in pertinent part as follows:
If you fail to follow established guidelines or violate the rules and policies of Westminster Village North, you will be subject to disciplinary action. In most cases, disciplinary action will begin with an oral warning from your supervisor. ....
....
The disciplinary action taken will be determined by the seriousness of the violation. Therefore, if warranted, the oral warning may be omitted and the written warning or dismissal may occur immediately. ...
(R. at 33; emphasis added.) This Section also provides that "to resolve any misunderstandings, problems or grievances which arise in connection with disciplinary action or with your job in general," the employee grievance "should be presented either orally or in writing to your immediate supervisor/Department Head within five (5) working days following the incident in question." The Section further provides that the supervisor "must answer" the grievance "in writing within three (3) working days." (R. at 33.) If still not satisfied, the employee may take the grievance "within five (5) working days" to the Staff Council who will make a recommendation to the Executive Director. The Executive Director "will make a final determination and provide the employee with a written response." (R. at 34.)
Section V.M. of the Handbook, captioned "Rules of Employee Conduct," lists numerous violations under the subheadings of "minor" and "major" rule violations, and states at the end of the Section: "The foregoing list is not intended to be all inclusive." (R. at 81-83, 83.) Examples of major violations listed are number 2 which prohibits "[b]ringing or consuming alcohol or drugs on the premises, or reporting for duty under the influence of alcohol or drugs," and number 4 which prohibits "[a]ny act or omission which might endanger the safety or life of residents, employees or self." (R. at 82.) With regard to minor violations, the Handbook states that they "can result in either verbal or written warnings which if not corrected can result in dismissal." (R. at 81.) With regard to major violations, the Handbook expressly states that "your continued employment may not be deemed desirable," and that such violations "can result in immediate discharge without warning." (R. at 82.)
Section II.A. of the Handbook creates three categories of employees: an "orientation employee," who is in the initial three months of employment or re-employment, a "regular employee," who has completed the orientation period and been evaluated for continued employment, and a "probation employee," who has been put on probation for disciplinary problems. (R. at 21). Section II. G. provides for annual performance evaluations, and Section VI.A., captioned "What Employees Can Expect from Westminster Village North," states: "You have job security and opportunity for advancement." (R. at 84-85.)
It also is not disputed that Westminster's procedure is to have employees review the Handbook and sign an accompanying "Personnel Handbook Statement" ("Statement"), which is referenced in that Handbook, at the time they are hired, and that Orr, Smith, and Robinson each reviewed the Handbook and signed the Statement.[2] Just above the signature and date lines of the Statement, the following certification appears:
This is to certify that I have read and understand the contents of the current Personnel Handbook for employees of Westminster Village North, Inc. The handbook *717 is subject to change and therefore is not considered a contract with Westminster Village North, Inc. ...
(R. at 426, 683.) It is also undisputed that plaintiffs did not avail themselves of the grievance procedures outlined in the Handbook;[3] that plaintiffs have no written contract of employment with Westminster (unless the Handbook is construed as a contract); that they offered no independent consideration to convert their at-will relationship to an employment relationship requiring Westminster to dismiss for cause only; and that they did not assert promissory estoppel or that they relied to their detriment upon the Handbooks or any other written or oral statements.

DISCUSSION
The sole question in this case is whether the Handbook served to convert plaintiffs' otherwise at-will employment relationship with Westminster into an employment relationship that required Westminster to terminate them only for good cause. We conclude that it does not. Accordingly, we reverse the decision of the Court of Appeals and reinstate the trial court's decision granting summary judgment for Westminster.
We review the trial court's decision granting summary judgment for Westminster, as did the court below, to determine whether the trial court correctly concluded that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Trial Rule 56(C); Greathouse v. Armstrong, 616 N.E.2d 364, 365-66 (Ind.1993). While plaintiffs below were obliged to disgorge sufficient evidence to controvert Westminster's assertion that there exists no factual issue to be tried, see Shideler v. Dwyer, 275 Ind. 270, 417 N.E.2d 281, 293 (1981), we view the facts liberally and in the light most favorable to plaintiffs as non-movants, see Wior v. Anchor Industries, Inc., 669 N.E.2d 172, 177 n. 4 (Ind.1996). We begin our review of the lower court's decision by discussing the status of the employment-at-will doctrine in Indiana and any exceptions to that doctrine recognized by this Court. We then analyze the Handbook and the accompanying Statement referenced in that Handbook and signed by plaintiffs.

I.
Historically, Indiana has recognized two basic forms of employment: (1) employment for a definite or ascertainable term; and (2) employment at-will. If there is an employment contract for a definite term, and the employer has not reserved the right to terminate the employment before the conclusion of the contract, the employer generally may not terminate the employment relationship before the end of the specified term except for cause or by mutual agreement.[4] If there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause, by either party. Wior v. Anchor Industries, Inc., 669 N.E.2d at 175; Speckman v. Indianapolis, 540 N.E.2d 1189, 1192 (Ind.1989); McClanahan v. Remington Freight Lines, Inc., 517 N.E.2d 390, 392 (Ind.1988).
The employment-at-will doctrine is a rule of contract construction, not a rule imposing substantive limitations on the parties' freedom to contract. Streckfus v. Gardenside Terrace Co-Op., Inc., 504 N.E.2d 273, 275 (Ind.1987). If the parties choose to include a clear job security provision in an employment contract, the presumption that the employment is at-will may be rebutted. See Speckman, 540 N.E.2d at 1192; Streckfus, 504 N.E.2d at 275. Nevertheless, in Indiana, the presumption of at-will employment is strong, and this Court is disinclined to adopt broad and ill-defined exceptions to the employment-at-will doctrine. See Wior, *718 669 N.E.2d at 177 & n. 5, 178; McClanahan, 517 N.E.2d at 393.
This Court has recognized only three ways to avoid or rebut the presumption of at-will employment, or stated another way, three exceptions to the employment-at-will doctrine. First, if an employee establishes that "adequate independent consideration" supports the employment contract, the Court generally will conclude that the parties intended to establish a relationship in which the employer may terminate the employee only for good cause. See Romack v. Public Service Co., 511 N.E.2d 1024, 1026 (Ind.1987) (adopting in substantial part and incorporating Romack v. Public Service Co., 499 N.E.2d 768, 777 (Ind.Ct.App.1986)(Conover, J., dissenting)). Generally, simply surrendering another job or moving to another location to accept a new position which the employee sought, standing alone, does not constitute adequate independent consideration. Wior, 669 N.E.2d at 173-77.[5] Such adequate independent consideration is provided, however, when, for example, the employer is aware that "the employee had a former job with assured permanency (or assured non-arbitrary firing policies)" and "the employee was only accepting the new job upon receiving assurances the new employer could guarantee similar permanency," Wior, 669 N.E.2d at 175-76 (citing Romack, 499 N.E.2d at 778), or when the employee entered into a settlement agreement releasing the employer from liability on an employment-related claim against the employer, Speckman, 540 N.E.2d at 1192.
Second, we have recognized a public policy exception to the employment-at-will doctrine if a clear statutory expression of a right or duty is contravened. Wior, 669 N.E.2d at 177 n. 5. For example, we have invoked the public policy exception when an employee was discharged for filing a workmen's compensation claim, Frampton v. Central Indiana Gas Co., 260 Ind. 249, 297 N.E.2d 425 (1973), or when an employee was discharged for refusing to commit an illegal act, McClanahan v. Remington Freight Lines, Inc., supra.
Third, this Court has recognized that, in certain instances, an employee may invoke the doctrine of promissory estoppel. To do so effectively, the employee must plead or assert the doctrine with particularity.[6] The employee must assert and demonstrate that the employer made a promise to the employee; that the employee relied on that promise to his detriment; and that the promise otherwise fits within the Restatement test for promissory estoppel.[7]See Jarboe v. Landmark Community Newspapers of Indiana, Inc., 644 N.E.2d 118, 121 (Ind.1995)(adopting Restatement (Second) of Contracts § 90(1) (1981)).[8]
In their opposition to Westminster's transfer petition before this Court, plaintiffs do not rely on the public policy exception to the employment-at-will doctrine. They also have not asserted the doctrine of promissory estoppel, and, in any event, the record is devoid of any meaningful evidence that they relied to their detriment upon the Handbook or any other statements by Westminster.[9] Moreover, *719 plaintiffs have made no effort to establish that they provided Westminster with adequate independent consideration so as to support an employment relationship that is terminable for good cause, perhaps because none of the plaintiffs left jobs with assured permanency to accept work at Westminster[10] or provided anything to Westminster other than their services.
Plaintiffs argue instead quite simply that the employment-at-will doctrine is harsh and outdated, and that we should construe the Handbook as a unilateral contract[11] allowing Westminster to discharge them only for good cause. Stated another way, plaintiffs urge us to establish a broad new exception to the at-will doctrine for employee handbooks. We are aware that there has been substantial criticism of the at-will doctrine and a significant amount of commentary and litigation regarding whether employee handbooks constitute valid contracts and, if so, under what circumstances.[12] We are also aware that this Court has not expressly addressed and resolved the question of whether unilateral contracts in the employment context always require adequate independent consideration[13] and whether an *720 employee handbook can ever constitute a unilateral contract serving to modify the otherwise at-will employment relationship.[14]See Wior v. Anchor Industries, Inc., 669 N.E.2d at 175-78 & n. 6; Streckfus v. Gardenside Terrace Co-Op., Inc., 504 N.E.2d at 276. Nevertheless, we decline plaintiffs' invitation to use this case as a vehicle for resolving these questions.

II.
Even if we were to conclude that an employee handbook, under some circumstances, can constitute a valid unilateral contract in the absence of adequate independent considerationand we do not do so today Westminster's Handbook could not constitute such a unilateral contract and, in fact, cannot meet the requirements set forth in Duldulao v. Saint Mary of Nazareth Hosp. Center, 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987), upon which plaintiffs primarily rely while urging the Court to create a handbook exception to the employment-at-will doctrine.[15]
Under the Duldulao rule, an employee handbook may constitute a unilateral contract and bind the employer if the following three criteria are met: (1) the language of the employee handbook must contain "a promise clear enough that an employee would reasonably believe that an offer had been made;" (2) the employee handbook must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing work after learning of the terms of the employee handbook. Id. Here, we need go no further than the first step under Duldulao. The Handbook certainly cannot be said to contain *721 a "clear promise" which plaintiffs could reasonably believe constitutes an "offer." Not only is a statement that employees will only be discharged for just or good cause absent from the Handbook, but also the Handbook expressly states that while "in most cases, disciplinary action will begin with an oral warning .... if warranted ... dismissal may occur immediately." (R. at 33.) The Handbook also states that the list of violations "is not intended to be all inclusive," (R. at 83) and emphasizes that major violations in particular "can result in immediate discharge without warning," (R. at 82). Thus, there is no clear promise to follow a progressive disciplinary approach, and, in fact, there are clear statements which provide that Westminster, in appropriate circumstances, may discharge employees without warning. Under such circumstances, Illinois courts interpreting Duldulao have concluded that, as a matter of law, the employee handbook does not create enforceable contract rights because the handbook has prescribed no "specific procedures" by "positive and mandatory language." St. Peters v. Shell Oil Co., 77 F.3d 184, 187 (7th Cir.1996); Lampe v. Swan Corp., 212 Ill.App.3d 414, 156 Ill.Dec. 658, 659, 571 N.E.2d 245, 246 (1991).
If this were not enough, the Handbook also contains a disclaimer, which is placed towards the front of the Handbook and which clearly states that the Handbook is not a contract and that its terms can be changed at any time. A similar disclaimer is included in the Personnel Handbook Statement which accompanied, and was referenced in, the Handbook and which Westminster required plaintiffs to sign. Again, even under the Duldulao rule, an employee handbook bearing or accompanied by such disclaimers, particularly when the employee signs one of the disclaimers, generally, as a matter of law, does not create a unilateral contract. See Robinson v. Christopher Greater Area Rural Health Planning Corp., 207 Ill.App.3d 1030, 152 Ill.Dec. 891, 895, 566 N.E.2d 768, 772 (1991) (handbook includes disclaimer; stressing that the existence of a contract is a matter of law for the court); Anders v. Mobil Chemical Co., 201 Ill.App.3d 1088, 147 Ill. Dec. 779, 780, 784, 559 N.E.2d 1119, 1120, 1124 (1990) (handbook includes disclaimer); Bennett v. Evanston Hosp., 184 Ill.App.3d 1030, 133 Ill.Dec. 113, 540 N.E.2d 979 (1989) (handbook includes disclaimer; stressing that the existence of a contract is a matter of law for the court); Chesnick v. Saint Mary of Nazareth Hosp., 211 Ill.App.3d 593, 156 Ill. Dec. 69, 570 N.E.2d 545 (1991) (plaintiff signed disclaimer).
The Handbook's vague and general statements about categories of employees, annual performance reviews, and job security, when weighed against the clear and specific language giving Westminster broad discretion in disciplinary matters and the prominent disclaimers, are simply not enough to create an issue of material fact as to whether the Handbook constituted a valid offer under a unilateral contract analysis. See Lee v. Canuteson, 214 Ill.App.3d 137, 157 Ill.Dec. 900, 573 N.E.2d 318 (1991). As a matter of law, then, such a Handbook could not constitute a valid unilateral contract even if we were to hold that there were no requirement that such a contract be supported by adequate independent consideration.[16]
Moreover, even if the Handbook could be construed as a clear promise sufficient to constitute an offer supporting a unilateral contract, there is a significant question as to whether plaintiffs could argue successfully that the unilateral contract had been breached when they themselves did not comply with the grievance procedures set out in the Handbook. A number of cases have held that plaintiffs cannot assert a breach under *722 their asserted employment contract, that is, the employee handbook, and yet fail to follow the grievance procedures set forth in that handbook, procedures that may have provided relief from the asserted unfair treatment or breach.[17] Stated another way, these cases hold that employees must exhaust their remedies as set forth in the contract or handbook before resorting to the courts. Plaintiffs here have not done so.

CONCLUSION
We re-affirm the vitality of the employment-at-will doctrine in Indiana and the general rule that adequate independent consideration is necessary to convert an at-will relationship into an employment relationship requiring an employer to discharge an employee for good cause. We decline plaintiffs' invitation to construe employee handbooks as unilateral contracts and to adopt a broad new exception to the at-will doctrine for such handbooks. We conclude that, even if we were to adopt an exception to the at-will doctrine, Westminster's Handbook does not constitute a clear offer supporting a binding unilateral contract because its language regarding progressive discipline procedures is suggestive rather than mandatory and because the Handbook includes a prominent disclaimer and was accompanied by a second disclaimer, which is referenced in the Handbook and which was signed by plaintiffs. Accordingly, we reverse the Court of Appeals' decision and reinstate the trial court's decision granting summary judgment in Westminster's favor.
SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.
NOTES
[1] The complaint below, in addition to alleging wrongful discharge because of a breach of contract, here, the Handbook, also included three other counts. Plaintiffs alleged that Westminster breached an implied covenant of fair dealing, that Westminster negligently investigated the incident which resulted in plaintiffs' discharge, and that Westminster defamed plaintiffs. Plaintiffs did not seek summary judgment on the defamation claim, which remains pending. Plaintiffs did not press in the Court of Appeals the other claims, which had been before the trial court on defendant's partial summary judgment motion, and these issues are now waived. See Ind. Appellate Rule 8.3(A)(7) (1997). Moreover, in their opposition to Westminster's transfer brief, plaintiffs have not challenged that portion of the Court of Appeals' decision which concluded that Ind. Code § 22-6-3-1 (1993) (requiring an employer, upon request, to provide a letter to the employee stating "for what cause, if any, such employee has quit or been discharged") did not create an additional public policy exception to the at-will doctrine, and, therefore, we summarily affirm on that issue. See Kimberlin v. DeLong, 637 N.E.2d 121, 123 n. 1 (Ind.1994) (interpreting Ind. Appellate Rule 11(B)(3) and reasoning that "summarily affirmed" indicates "that we are declining to review certain issues, in essence a partial denial of transfer"). The sole question directly presented to this Court, therefore, is the Court of Appeals' holding on the breach of contract question.
[2] Robinson signed the Statement on May 15, 1989 after reading the 1988 version of the Handbook. Smith signed the Statement on April 25, 1988 after reviewing an earlier and substantially similar version of the Handbook. He also received and reviewed the 1988 version. Orr, who resigned from Westminster and was later re-hired prior to this incident, did not dispute that he read the 1988 version of the Handbook, or that he signed the Statement at the time Westminster re-hired him.
[3] Robinson testified that he was not aware of the grievance procedures. Smith testified that he did not understand the details of the grievance procedures. Orr testified that he did not personally utilize the grievance procedure, but that his attorney may have attempted to comply with the procedure by writing a letter. His attorney, however, had maintained only that it would have been futile to utilize the grievance procedure in light of the fact that Westminster had already terminated Orr.
[4] Seco Chemicals, Inc. v. Stewart, 169 Ind.App. 624, 633, 349 N.E.2d 733, 738 (1976).
[5] Citing Ohio Table Pad Co. v. Hogan, 424 N.E.2d 144, 146 (Ind.Ct.App.1981).
[6] Holloway v. Giganti, Inc., 540 N.E.2d 97, 99 (Ind.Ct.App.1989); Schill v. Choate, 144 Ind.App. 543, 555, 247 N.E.2d 688, 696 (1969).
[7] See First Nat'l Bank of Logansport v. Logan Mfg. Co., 577 N.E.2d 949, 954-56 (Ind.1991) (citing Lyon Metal Products, Inc. v. Hagerman Constr. Corp., 181 Ind.App. 336, 341, 391 N.E.2d 1152, 1154 (1979)). See also D & G Stout, Inc. v. Bacardi Imports, Inc., 923 F.2d 566, 568 (7th Cir.1991) (discussing Indiana law).
[8] Section 90(1) of the Restatement (Second) of Contracts (1981) provides: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee and a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise. The remedy for breach may be limited as justice requires." Id. at 242.
[9] Although the Court of Appeals expressly concluded that a genuine issue of material fact is in dispute because "evidence supports the Employees' contention that they either began work at Westminster or continued working there in reliance upon possible job security provisions found in the Handbook," 651 N.E.2d at 801, it did not explain its conclusion or point to the evidence to which it generally referred. Based upon our review of the record, we were unable to find any meaningful evidence of reliance or even express assertions of reliance. Certainly plaintiffs' designation of facts and materials in support of their opposition to Westminster's motion for summary judgment is too general to be of assistance on the question of reliance or any other issue in this case, as it simply cites generally to several documents in their entirety, including, the complaint, the answer, and five deposition transcripts. Their opposition memorandum also fails to establish or even clearly assert reliance. For this reason alone, Indiana Trial Rules 56(C) and (H) would appear to preclude a reversal of the trial court's decision granting summary judgment to Westminster. See Rosi v. Business Furniture Corp., 615 N.E.2d 431, 434-35 & nn. 2-3 (Ind. 1993).
[10] Immediately prior to beginning work at Westminster, Orr and Robinson were unemployed. Smith had just moved to Indiana from Tennessee and was doing odd jobs for a man who allowed him to stay on his premises and ultimately helped him get a job at Westminster.
[11] Ordinarily, in a unilateral contract, there is no bargaining process or exchange of promises by the parties as in a bilateral contract. Only one party makes an offer (or promise) which invites performance by another, and the performance constitutes both the acceptance of that offer and consideration. See Richard J. Pratt, Unilateral Modification of Employment Handbooks: Further Encroachments on the Employment-at-will Doctrine, 139 U. Pa. L.Rev. 197, 210 & nn. 83-84 (1990). See also 1A Arthur Corbin, Corbin on Contracts § 152, at 13-17(1963); Arthur Corbin, Corbin on Contracts One Volume Edition § 21, at 31-36, § 63, at 102-03 (1952); John Calamari & Joseph Perillo, The Law of Contracts § 2-10 (3d ed.1987).
[12] See generally 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 1004-11 (Paul W. Crane, Jr. et al. eds.1996); Michael A. Chagares, Utilization of the Disclaimer as an Effective Means to Define the Employment Relationship, 17 Hoffstra L.Rev. 365 (1989); Michael J. Phillips, Disclaimers of Wrongful Discharge Liability: Time for a Crackdown? 70 Wash. U.L.Q. 1131 (1992); Deborah A. Schmedemann & Judi McLean Parks, Contract Formation and Employee Handbooks: Legal, Psychological, and Empirical Analyses, 29 Wake Forest L.Rev. 647 (1994); David J. Walsh & Joshua L. Schwartz, State Common Law Wrongful Discharge Doctrines: Up-Date, Refinement, and Rationales, 33 Am. Bus. L.J. 645 (1996); Kathleen A. Kynberg, Must Employment Manuals Contain Disciplinary Procedures to Form Binding Contracts? Resolving the Confusion in the Illinois Appellate Courts, 21 S. Ill. U.L.J. 297 (1997); Pratt, supra note 11; Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith, 93 Harv. L.Rev. 1816 (1980); Gabriel S. Rosenthal, Crafting a New Means of Analysis for Wrongful Discharge Claims Based on Promises in Employee Handbooks, 71 Wash. L.Rev. 1157 (1996); George L. Blum, Annotation, Effectiveness of Employer's Disclaimer or Representations in Personnel Manual or Employee Handbook Altering At-Will Employment Relationship (1994 & Supp.1997); Theresa Ludwig Kruk, Annotation, Right to Discharge Allegedly "At-Will" Employee as Affected by Employer's Promulgation of Employment Policies as to Discharge (1984 & Supp.1997).
[13] The Court of Appeals decisions on this point are not entirely clear and consistent. Compare Tuthill Corp. v. Wolfe, 451 N.E.2d 72, 75, 78 (Ind.Ct.App.1983)(holding that an employee's future services constitute consideration for the employer's written incentive compensation plan) with Seco Chemicals, Inc. v. Stewart, supra note 4, 349 N.E.2d at 735, 737-38 (where employer terminated employee before the end of a stated termas long as the employee sells any product to a particular customerin an agreement signed by employee but not by the appropriate representative of the employer, employer bound by the agreement; reasoning that when one party acts upon the promises of the other party and performs his part of the agreement, the other party becomes bound by that performance and also stating that the employee gave consideration by abandoning his previous position which the employee stated he would not leave without a contract). See also Ryan v. J.C. Penney Co., 627 F.2d 836, 838 (7th Cir.1980)(reading Seco as requiring either a definite term or separate executed consideration to support a unilateral employment contract); Stack v. Allstate Insurance Co., 606 F.Supp. 472, 475 n. 1 (S.D.Ind.1985) (citing Ryan and Seco, but not Tuthill, and reasoning that, in Indiana, a unilateral employment contract must establish a definite term of employment or be supported by independent consideration other than the rendering of services by the employee). See generally authorities cited supra at note 11.
[14] A number of Court of Appeals decisions have held, without discussing the adequate independent consideration requirement, that the terms of an employee handbook are irrelevant unless the employment contract is one for a definite term. See, e.g., Tri-City Comprehensive Community Mental Health Center, Inc. v. Franklin, 498 N.E.2d 1303, 1305-06 (Ind.Ct.App.1986) (no discussion of the terms of the policy manual in the majority opinion); Mead Johnson and Co. v. Oppenheimer, 458 N.E.2d 668, 671 (Ind.Ct.App. 1984) (no discussion of the terms of the handbook; states that, under the at-will rule, certain contractual limitations may arise, but not on the facts of the case before it); Campbell v. Eli Lilly and Co., 413 N.E.2d 1054, 1062 (Ind.Ct.App. 1980) (no discussion of the terms of the handbook); Shaw v. S.S. Kresge Co., 167 Ind.App. 1, 6-7, 328 N.E.2d 775, 778-79 (1975) (discussing terms of the handbook, which were general, and stating that, as the contract was not a term contract, the court does not reach the question whether a unilateral contract might result from an employer's promise supported by the consideration provided by an employee's services or reliance on the promise).
[15] Courts holding that an employee handbook constitutes a contract have done so utilizing various theories and tests. See generally Chagares, supra note 12, at 372-75; Phillips, supra note 12, at 1138-40; Walsh & Schwarz, supra note 12, at 665-69 (briefly summarizing a number of approaches and providing a survey chart of the status of the issue throughout the United States). Compare Pine River v. Mettille, 333 N.W.2d 622, 626 (Minn.1983) (reasoning that a handbook constitutes a valid unilateral contract if the offer is definite in form, communicated by dissemination to employees, and accepted and supported by consideration, that is, the employees' services) and Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725, 731 n. 2, 734-35 (Ala.1987) (adopting a unilateral contract approach based on the Pine River analysis and emphasizing that the offer must be specific) with Weiner v. McGraw-Hill, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 197, 443 N.E.2d 441, 445 (1982) (noting that plaintiff rejected other offers of employment in reliance on assurances that the employer would not discharge him without good cause) and Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 685 P.2d 1081, 1088 (1984) (holding that a handbook creates an implied contract if it "creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations" and the employee justifiably relies on the employer's express policies, for example, by staying on the job and not seeking other employment). See also Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284, 491 A.2d 1257, 1268-69 & n. 10 (1985) (reasoning that reliance on a clear promise in a handbook is presumed).
[16] In Indiana, as in Illinois, the existence of a contract when the facts are undisputed is generally a question of law for the court. See Keating v. Burton, 617 N.E.2d 588, 592 (Ind.Ct.App. 1993). Cf. Noblesville Redevelopment Comm'n v. Noblesville Associates Ltd. Partnership, 674 N.E.2d 558, 562 (Ind.1996)(reasoning that the question of whether a written instrument creates a lien, as well as the construction of that lien, are questions of law for the court unless the writing is ambiguous and requires consideration of extrinsic evidence). See also Stinson v. American Sterilizer Co., 570 So.2d 618, 621 (Ala.1990)(whether the handbook is a contract is generally a question of law for the court); Slivinsky v. Watkins-Johnson Co., 221 Cal.App.3d 799, 270 Cal.Rptr. 585, 588 (1990)(whether an employment agreement is an integrated contract is a question of law for the court); French v. Foods, Inc., 495 N.W.2d 768, 770 (Iowa 1993)(absent ambiguity, question of whether a handbook is a contract is a question of law).
[17] See, e.g., Fregara v. Jet Aviation Business Jets, 764 F.Supp. 940, 951-53 (D.N.J.1991); Plummer v. Humana of Kansas, Inc., 715 F.Supp. 302, 304 (D.Kan.1988); O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 664 N.E.2d 843, 849-50 (1996); Dahlman v. Oakland University, 172 Mich.App. 502, 432 N.W.2d 304, 305-06 (1988); Schnelting v. Coors Distributing Co., 729 S.W.2d 212, 215 (Mo.Ct.App.1987). See generally Puller Mortgage Associates, Inc. v. Keegan, 829 F.Supp. 1507, 1518 (S.D.Ind.1993)(the plaintiff must show he performed his part as a condition precedent to recovering for breach of contract); Montgomery Ward & Co. v. Guignet, 112 Ind.App. 661, 667, 45 N.E.2d 337, 340 (1942)(plaintiff must meet the condition stipulated in the bonus plan outlined in his employment agreement before he can share in its benefits). Cf. Raymundo v. Hammond Clinic Ass'n, 449 N.E.2d 276, 283 (Ind. 1983)(a party may not claim benefits under a transaction or instrument and, at the same time, repudiate its obligations).