OPINION
 

 NAJAM, Judge
 

 STATEMENT OF THE CASE
 

 This appeal arises from the trial court’s grant of summary judgment in favor of the Board of Directors of the Monroe County Public Library (the “Board”), John W. Lash-er and Kathleen Gregg (collectively, “Defendants”) and against Kenley E. Burke. Burke sued Defendants following the termination of his employment with the Monroe County Public Library (the “Library”). Burke’s complaint sought money damages for breach of contract and intentional interference with an employment contract. Burke alleged, in part, that he had been wrongfully discharged based on accusations by Gregg and Lasher that Burke had sexually harassed Gregg. Burke further alleged that he had been discharged in retaliation for refusing to destroy a videotape upon his supervisor’s “illegal” request. Finally, Burke asserted that he had been discharged in violation of his right to free speech and association under the First and Fourteenth Amendments to the United States Constitution.
 

 We affirm.
 

 ISSUES
 

 Burke presents several issue for review which we restate as:
 

 1. Whether Burke’s claims for breach of contract, intentional interference with an employment contract and retaliatory discharge are subject to the 180-day notice requirement of the Indiana Tort Claims Act (the “Act”).
 

 2. Whether Defendants are entitled to summary judgment on Burke’s First Amendment claim.
 

 
 *1139
 
 FACTS
 

 Burke began working at the Library in 1985 as a production assistant for Blooming-ton Community Access Television (“BCAT”). On or about April 5, 1994, Burke received a document entitled “MCPL Notice of Disciplinary Action,” indicating that he had been suspended for “intimidating a fellow employee.” The charge of intimidation was based on a letter submitted by Gregg to her supervisor at the Library, stating the following:
 

 On January 26 at a meeting of the [Bloom-ington Common Council], Kenley Burke touched and fondled my leg. The situation arose as I was sitting in front of the Blue Box near the sound console. Wes Lasher was sitting nearby. I had my legs crossed and [Burke] placed his hand on my thigh and started to slide his hands toward my crotch. The crew does not touch each other in this way, ever, but this was not the first time that Kenley had touched my legs since I’ve been working at BCAT nor was it the first time I had told him to stop. I believe my exact words were “Don’t ... touch me!” It was obvious that I was angry, but he just shrugged it off as a joke. Initially I was so intimidated by the implied threat of violence against anyone who should “cross” Kenley Burke that I didn’t speak out, but when I realized that this kind of behavior was ongoing, I felt I had to come forward. I mentioned the above incident to department head Michael White on 3/25/94. There are also many incidents of verbal comments in which I was made to feel uncomfortable, statements about my breasts, ass and legs. The most common being “When are you coming home with me?” which is said on an almost daily basis.
 

 /s/ Kathleen Gregg
 

 4/1/94
 

 Lasher, another Library employee, had also submitted a letter at the request of his supervisor that substantiated Gregg’s claim. Both letters were attached to Burke’s notice of suspension.
 

 After receiving the notice and attached letters, Burke requested a hearing before the Board to review his suspension. A hearing was held on April 27, 1994, at which Burke presented evidence to support his contention that the incident described by Gregg and Lasher could not have occurred. On May 4, 1994, the Board voted to terminate Burke’s employment with the Library and notified Burke of that action by mail. On May 6, 1996, Burke filed a four-count complaint against Defendants. Defendants filed a motion for summary judgment on which the trial court conducted a hearing on September 12,1997.
 

 In granting Defendants’ motion, the court concluded, in part, that Burke’s claims for breach of contract, intentional interference with an employment contract and retaliatory discharge sounded in tort and were, therefore, subject to and barred by the 180-day notice requirement of the Indiana Tort Claims Act. The court further concluded that Burke had failed to present facts entitling him to relief on his First Amendment claim. The trial court later clarified its findings and conclusions in response to Burke’s motion to correct error. The court concluded that Burke was an at-will employee and that under Indiana law, his breach of contract claim was actually a wrongful discharge tort claim subject to the Act’s notice requirement. Burke now appeals.
 

 DISCUSSION AND DECISION
 

 Standard of Review
 

 When reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any doubt as to any fact, or inference to be drawn therefrom, in favor of the party opposing summary judgment.
 
 Henshilwood v. Hendricks County,
 
 653 N.E.2d 1062, 1065 (Ind.Ct.App.1995),
 
 trans. denied.
 
 Summary judgment is appropriate only if the designated evidentiary material shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The party appealing from the grant of a motion for summary judgment has the burden of persuading the court on appeal that the trial court’s decision was erroneous.
 
 Jordan v. Deery,
 
 609 N.E.2d 1104, 1107 (Ind.1993).
 

 The trial court here entered specific findings and conclusions. However, our standard of review is unchanged by the entry
 
 *1140
 
 of findings of fact and conclusions thereon.
 
 Chicago Southshore & South Bend R.R. v. Itel Rail Corp.,
 
 658 N.E.2d 624, 629 (Ind.Ct.App.1995). Specific findings and conclusions are not required in the summary judgment context, and although they offer valuable insight into the trial court’s rationale for its judgment and facilitate appellate review, they aré not binding on this court.
 
 Trout v. Buie,
 
 653 N.E.2d 1002, 1005 (Ind.Ct.App.1995),
 
 trans. denied.
 

 On appeal, a trial court’s grant of summary judgment is clothed with a presumption of validity.
 
 Rosi v. Business Furniture Corp.,
 
 615 N.E.2d 431, 434 (Ind.1993). We indulge all reasonable presumptions in favor of the trial court.
 
 Chester v. Indianapolis Newspapers, Inc.,
 
 553 N.E.2d 137, 139 (Ind.Ct.App.1990). If there are no genuine issues of material fact, we will affirm a summary judgment on any legal theory supported by the record.
 
 Anderson v. Horizon Homes, Inc.,
 
 644 N.E.2d 1281, 1289 (Ind.Ct.App.1995),
 
 trans. denied.
 

 Issue One: Notice under the Indiana Tort Claims Act
 

 Burke argues that the trial court erroneously concluded that his claims for intentional interference with an employment contract, breach of contract and retaliatory discharge were subject to the notice requirement of the Indiana Tort Claims Act. Specifically, he contends that the Act does not apply to his claim for intentional interference with an employment contract because Lasher and Gregg were acting outside the scope of their employment when they filed their letters of complaint with the Library. Burke also contends that his complaint constitutes a “petition for judicial review” and, thus, is not subject to the Act. Finally, he insists that the trial court erred when it concluded that his “breach of contract” claim against the Board sounded in tort. We will discuss each argument in turn.
 

 A. Scope of Employment
 

 Pursuant to the Indiana Tort Claims Act, Indiana Code §§ 34^4-16.5-1 through 34-4-16.5-22, governmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the Act applies.
 
 Scott v. City of Seymour,
 
 659 N.E.2d 585, 588 (Ind.Ct.App.1995). However, a tort claim against a political subdivision is barred unless notice is filed with “the governing body of that political subdivision ... within One Hundred Eighty (180) days after the loss occurs_ ” Ind.Code § 34-4-16.5-7. Governmental employment, standing alone, does not trigger the Act’s notice requirement. Rather, where the plaintiff elects to sue only the government employee,
 
 [1]
 
 notice is required if the act or omission causing the plaintiffs loss is within the scope of the defendant’s employment.
 
 VanValkenburg v. Warner,
 
 602 N.E.2d 1046, 1049 (Ind.Ct.App.1992) (citing Ind.Code § 34-4-16.5-5),
 
 trans. denied.
 
 Stated differently, a causal relationship must exist between the plaintiffs injury and the government employment before notice is required under the Act.
 
 Id; see also Bienz v. Bloom,
 
 674 N.E.2d 998, 1004 (Ind.Ct.App.1996),
 
 trans. denied.
 
 An act or omission is deemed to have occurred in the scope of an individual’s employment if the act is done by one acting as the employer’s alter ego or according to the employer’s direct order.
 
 See Shelby v. Truck & Bus Group Div. of General Motors Corp.,
 
 533 N.E.2d 1296, 1298 (Ind.Ct.App.1989).
 

 It is undisputed that the incident complained of by Gregg and substantiated by Lasher occurred in the course of the parties’ employment with the Library. The facts show that Burke allegedly fondled Gregg’s leg while they were performing their employment duties during a Bloomington Common Council meeting. It is also undisputed that Gregg and Lasher were authorized, if not obligated, to report the incident between Burke and Gregg to their supervisor as provided in the Library’s personnel handbook, which states in relevant part:
 

 An employee who feels he/she is a victim of sexual harassment, or observes sexual harassment, should ask that person to stop the harassment.
 
 If this proves unsuccess
 
 
 *1141
 

 ful or the employee tvould rather not confront the peipetrator, he/she should report the matter to his/her supervisor.
 

 According to her complaint letter, Gregg followed the procedure outlined above: She first asked Burke to stop the harassment and, when that proved unsuccessful, she informed her supervisor of the problem. It is further undisputed that Lasher submitted his corroborating letter at the request of his supervisor, Assistant Director Jan Yeager. Based on the foregoing, we conclude that Gregg and Lasher were acting within the scope of their employment when they submitted their respective letters.
 

 In making his argument, Burke contends that the incident complained of by Gregg and Lasher did not occur and that their accusations against him are false. The veracity of the complaint is irrelevant in determining whether Gregg and Lasher were acting within the scope of their employment when they submitted their letters. The submission of a harassment complaint by one employee against another is clearly within the scope of employment where, as here, the complaint is filed pursuant to the employer’s policy or request and concerns an incident alleged to have occurred within the course of employment. Consequently, Burke’s claim for intentional interference with an employment contract, a claim which sounds in tort, is subject to the Act’s notice requirement.
 
 See Winkler v. V.G. Reed & Sons, Inc.,
 
 638 N.E.2d 1228, 1234 (Ind.1994) (intentional interference with employment contract is actionable tort). Because Burke failed to provide the prescribed notice, the trial court properly granted summary judgment in favor of Defendants on that claim.
 

 B. Petition for Judicial Review
 

 Next, Burke claims that his complaint constitutes a “petition for judicial review” and, therefore, is not subject to the Act’s notice requirement. In response, Defendants present several counter arguments, one of which is dispositive, i.e., that Burke failed to file his petition for judicial review in a timely manner under Section 5 of the Administrative Orders and Procedures Act. Ind.Code §§ 4-21.5-5-1 to 4-21.5-5-16.
 

 An aggrieved party is permitted to file a petition for judicial review of an adverse administrative action. Ind.Code § 4-21.5-5-3. The petition must be verified and meet several statutory prerequisites. As it relates to the case at hand, “a petition for review is timely only if it is filed within thirty days after the date that notice of the agency action that is the subject of the petition for judicial review is served.” Ind.Code § 4-21.5-5-5. In general, the failure to adhere to the statutory prerequisites for judicial review of administrative action is fatal in that it deprives the trial court of jurisdiction over the petition.
 
 See Binninger v. Hendricks County Bd. of Zoning Comm’rs,
 
 668 N.E.2d 269, 271 (Ind.Ct.App.1996).
 

 Here, Burke was terminated on May 4, 1994, but did not initiate his complaint against Defendants until May 6, 1996, well past the thirty-day requirement of Indiana Code § 4-21.5-5-5. When viewed as a petition for judicial review, Burke’s complaint was untimely filed and, thus, the trial court lacked jurisdiction over it. Burke cannot avoid application of the Act’s notice requirement by recasting his complaint as a petition for judicial review.
 

 C. “Breach of Contract” Claim
 

 Finally, Burke contends that the trial court erred when it concluded that his “breach of contract” claim against the Board sounded in tori and was, therefore, subject to the Act’s notice requirement. Again, we disagree.
 

 Historically, Indiana has recognized two basic forms of employment: (1) employment for a definite or ascertainable term and (2) employment-at-will.
 
 Orr v. Westminster Village North, Inc.,
 
 689 N.E.2d 712, 717 (Ind.1997). If there is an employment contract for a definite term, and the employer has not reserved the right to terminate the employment before conclusion of the contract, the employer generally may not terminate the employment relationship before the end of the specified term except for cause or by mutual agreement.
 
 Id.
 
 If there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause, by either party.
 
 Id.
 

 Unlike the wrongful discharge of a time- or contract-bound employee, the retal
 
 *1142
 
 iatory discharge of an employee-at-will gives rise to a cause of action in tort, rather than a claim for breach of contract.
 
 Holtz v. Bd. of Commrs. of Elkhart County,
 
 560 N.E.2d 645, 646 (Ind.1990);
 
 see also Bienz,
 
 674 N.E.2d at 1002-03. Stated differently, an employee-at-will may only bring an action for wrongful or retaliatory discharge; such actions are governed by the Indiana Tort Claims Act if brought against a governmental agency or employee.
 

 Burke argues that the Library personnel handbook constituted an employment contract and altered his status as an “at will” employee. Our supreme court has declined to hold that an employee handbook may constitute a valid unilateral contract, in the absence of independent consideration.
 
 See Orr,
 
 689 N.E.2d at 719. Even if the court had adopted such a rule, the Library’s handbook did not establish a contractual relationship.
 
 [2]
 
 The personnel handbook does not state that an employee may only be discharged for cause. Rather, it specifies:
 

 This handbook was prepared to let employees know the library’s practices and policies .... It outlines some of the guidelines for our operations,
 
 but it is not intended to describe or create a contractual relationship between the Monroe County Public Library and any of its employees.
 

 (emphasis added). Given the clear language of this disclaimer, Burke could not have reasonably believed that the handbook created an employment contract. The trial court was correct in finding Burke to be an at-will employee. Although Burke styled his claim against the Library as a “breach of contract,” the claim sounded in tort and was subject to the Act’s notice requirement.
 

 Issue Two: First Amendment Claim
 

 Burke also maintains that the trial court erred in granting summary judgment in favor of Defendants on his First Amendment claim. In his complaint, Burke set forth the following allegations:
 

 26. In May, 1993, a proposal for a new Arts Channel was made by David Derkacy, at a meeting of the Telecommunications Council of Bloomington, Indiana which was video taped for later cable broadcast by Bloomington Community Access Television (BOAT). After the meeting, Plaintiff’s supervisor told Plaintiff that the video tape of the meeting should never be shown, “if people hear what he (Derkacy) is talking about they might agree with him, so we ought to get rid of it.” Plaintiff refused to destroy the video tape of the meeting and, instead, gave the tape to his supervisor.
 

 27. David Derkacy eventually complained to the director of [the Library], David Bucove, that BOAT had put a “hold” on broadcast of the meeting in question.
 

 28. Plaintiff was told by his supervisor not to talk to David Derkacy again “if you know what’s good for you.”
 

 29. Plaintiff did not stop talking to or associating with David Derkacy.
 

 30. Plaintiff was discharged from employment because he continued to exercise his rights under the First and Fourteenth Amendments to the United States Constitution to speak to and associate with David Derkacy.
 

 In rejecting Burke’s claim, the trial court found there was no evidence indicating that Burke had been discharged based on his further communications or association with David Derkacy.
 

 The United States and Indiana Supreme Courts have adopted a three-part test for determining whether an employee was discharged in violation of his right to free speech:
 

 “First, the employee must be speaking on a matter of public concern about which
 
 *1143
 
 free speech and open debate is vital to the decision making of the community. Second, the reviewing court must balance the interests of the employee, as a citizen, in commenting upon matters of public concern and the State’s interest, as an employer, in running an efficient operation. Third, the employee’s protected conduct must be a motivating factor in the State’s decision to fire him.”
 

 Campbell v. Porter Co. Bd. of Comm’rs,
 
 565 N.E.2d 1164, 1167 (Ind.Ct.App.1991) (quoting
 
 Indiana Dep’t of Highways v. Dixon,
 
 541 N.E.2d 877, 881 (Ind.1989)).
 

 Here, the designated evidence shows that Burke’s termination was based solely on his harassment of Gregg. Burke has not designated any materials indicating that the Board was aware of Burke’s continuing relationship with Derkacy or that such a relationship was a motivating factor in his termination. In addition, Burke has failed to designate evidence establishing the content of his conversations with Derkacy and, thus, there is nothing in the record to support an inference that the conversations dealt with a matter of “public concern.” Because Burke has failed to support his claim with anything other than his own self-serving allegations, Defendants were entitled to summary judgment as a matter of law on this claim.
 

 CONCLUSION
 

 In sum, we conclude that Burke’s claims for intentional interference with an employment contract, retaliatory discharge and breach of contract are subject to the notice requirement of the Indiana Tort Claims Act. It is undisputed that Burke failed to provide the prescribed notice. In addition, Burke has failed to designate evidence establishing that he was terminated for exercising his right to free speech. Accordingly, Defendants were entitled to summary judgment as a matter of law on all of Burke’s claims.
 

 Affirmed.
 

 SHARPNACK, C.J., and BAILEY, J., concur.
 

 [1]
 

 . Burke’s argument that Lasher's and Gregg’s actions were outside the scope of their employment does not apply to the Board. It is undisputed that the Act’s notice requirement applies to Burke’s claims against the Board to the extent that those claims sound in tort.
 
 See
 
 discussion,
 
 Issue One, C, infra.
 

 [2]
 

 . In
 
 Orr,
 
 our supreme court explicitly refused to hold that an employee handbook may create a unilateral employment contract absent independent consideration. However, for the sake of argument, the court did apply the test adopted by the Illinois Supreme Court in
 
 Duldulao v. Saint Mary of Nazareth Hosp. Ctr.,
 
 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 318 (1987). There, the court held that an employee handbook may constitute a unilateral contract if the following three criteria are met: (1) the language of the employee handbook must contain "a promise clear enough that the employee would reasonably believe than an offer had been made;” (2) the employee handbook must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing work after learning of the terms of the employee handbook.
 
 Id.