In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3203

DAVID FARR,

*Plaintiff-Appellant,*

*v.*

ST. FRANCIS HOSPITAL AND HEALTH CENTERS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 06 C 779—**Sarah Evans Barker,** *Judge.*

ARGUED JUNE 1, 2009—DECIDED JUNE 29, 2009

Before EASTERBROOK, *Chief Judge*, and BAUER and
EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. David Farr contends that he was
fired from his employment at St. Francis Hospital and
Health Centers in Indianapolis because he is a man. He
filed this action alleging sex discrimination in employ-
ment, 42 U.S.C. § 2000e-2(a)(1), and, as relevant to
this appeal, he tacked on pendent state law claims for
defamation and breach of the covenant of fair dealing.

The state law claims were dismissed and, later, summary judgment was granted on the discrimination claim. Both decisions are subject to our *de novo* review on Farr's appeal. *Village of DePue, Ill. v. Exxon Mobil Corp.* 537 F.3d 775 (7th Cir. 2008); *Jackson v. County of Racine*, 474 F.3d 493 (7th Cir. 2007).

In 2000, Connie Little, director of Respiratory Care Services for St. Francis, hired Farr as a respiratory therapist. Little became his supervisor. A few years later, Farr transferred to a position as a respiratory therapist in the Pulmonary Rehabilitation Department where Beverly Smith became his immediate supervisor.

At the time Farr's employment was terminated, there were seven respiratory therapists in his department. All but Farr were women. The department also had a computer, shared by all, and that eventually became a problem, certainly it became a big problem, for Mr. Farr.

Although all of the therapists in the department used a single computer, each had an individual user name and password. Hospital policy indicated that the therapists should log off the computer when they finished using it, but in practice, with a few exceptions, what ordinarily happened is that the first person to log on each day would stay logged on throughout the day and everyone using the computer would then be using it under the original log-in name. The computer was officially used for writing various reports and letters to physicians and sometimes for research regarding medical devices. Using the computer for personal reasons was allowed so long as it was not excessive or inappropriate.

One day, a respiratory therapist asked Ms. Smith to check out the computer. What Smith saw under "favorites" were several "lurid" and "obscene" Web sites. Smith determined that Farr was the person logged onto the computer at the time the sites were accessed. She deleted the names of the Web sites from the "favorites" list and logged Farr off the computer. Smith informed Little of what she had found and Little notified her supervisor, who suggested that Little notify someone in human resources, who, in turn, advised Little to inform Information Services (IS) and to confront Farr.

Farr was told that inappropriate Web sites had been found; he assumed they were adult pornography sites. He denied knowing how the sites had appeared under his log-in name. Little informed him that the Hospital would conduct an investigation. IS removed the computer from the department. The hard drive was sent to Alverno, the computer services division of the Hospital, to be examined. After the examination the investigator wiped the hard drive of all information and no copy was made, although there was a printout of the activity under Farr's password.

In the meantime, Farr went on unrelated medical leave. The day after he left on leave, Karen Sagar, the director of Recruitment and Retention, informed Little and Smith that IS's report summarizing its investigation was completed. The report concluded that inappropriate Internet sites had been accessed, including a significant number of "hacking" sites. The latter were of greater concern to the Hospital than the pornographic material.

As a result of this information, St. Francis continued the investigation to determine if any other employees had accessed inappropriate sites. IS found no evidence to that effect. Little asked that work schedules, job assignments, and time records be compared to usage of the computer. The comparison showed that Farr was the only employee who worked on a certain Saturday when there was a substantial amount of computer activity involving both pornography and hacking sites. Little decided to terminate Farr's employment.

When Farr returned from medical leave he was informed that the investigation uncovered evidence that he had inappropriately used the computer. Again he denied visiting inappropriate sites. Because of his denial, Little decided to ask IS to look at the situation one more time. Farr was placed on a five-day suspension. IS found no inappropriate usage on the part of other employees. When Farr returned he was accompanied by his attorneys, which inspired Little to refer the matter to the Hospital's legal department. Ultimately, Farr was fired for "breach of good conduct and inappropriate usage of the Hospital's electronic communications systems."

Farr filed a grievance and hired a computer expert to provide a report. In the information Farr provided to his expert, he admitted that he visited at least 17 of the 31 Web sites the Hospital was concerned about. He said he was using the computer to look for a way to reinstall Windows on his home computer and that during his search one of the Web sites he visited must have loaded

malware[1] onto the Hospital computer, which in turn automatically downloaded a list of links to pornographic Web sites. He said he was unaware that this had happened. The expert's report concluded that the list of pornographic Web sites was placed on the computer by malware without Farr's knowledge. In response to this report, Alverno created its own rebuttal report, which differed somewhat from its original report. In the grievance proceedings, Farr did not claim that the termination of his employment was based on gender discrimination. The grievance committee unanimously upheld the Hospital's actions.

Farr then filed the present lawsuit, claiming that he was the victim of gender discrimination. In his charge before the Equal Employment Opportunities Commission he made the following claim: "My attorney and our computer expert immediately recognized the list as having been secretly put on my computer by a virus and not by any human. It seems to me that any fair-minded person should instantly realize I didn't create the list." During his deposition he was asked how he could reconcile that statement with his admission that he visited 17 of the sites. He again acknowledged that he visited the sites. Nevertheless, his sex discrimination claim rests on his view that the Hospital assumed he was guilty of looking

---

[1] "Malware," in computer jargon, is a portmanteau from *mal*icious and soft*ware*. It refers to software (a worm, a virus, etc.) that infiltrates a computer system without the owner's knowledge.

at the pornography sites because he was the only man working in the department.

Farr also alleged that the Hospital breached an implied covenant of fair dealing found in the employee handbook. The alleged breach was based on his belief that the Hospital immediately assumed he downloaded the pornography because he was a male; he also claimed that the investigation was not fair. As to the defamation claim, he said that his superiors told employees who had "no need to know, that [he] had accessed pornography on his St. Francis computer." He contends that the Alverno report contained false and misleading statements regarding his use of the computer and improperly concluded that he used hacking and spyware tools to gain access to the Hospital's computer system.

Farr argues that he can prove his sex-discrimination claim through both the direct and the indirect methods. He says he has circumstantial evidence which points, under the direct method of proof, to a discriminatory reason for the firing.

Our cases say that in this situation, circumstantial evidence can be of three types. The first consists of such things as suspicious timing, ambiguous statements, or other bits and pieces from which an inference of discriminatory intent can be drawn. The second type is evidence that employees similarly situated to the plaintiff (except for the relevant characteristic, i.e., gender) received better treatment than he. Third is evidence that the plaintiff was qualified for the job but was passed over in favor of a person (in this case a female), and the em-

ployer's stated reason for its action is unworthy of belief—a pretext for discrimination. *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853 (7th Cir. 2007); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734 (7th Cir. 1994).

To prove his case by the indirect method, Farr must meet the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)—or, because his is a reverse sex discrimination case, a modified test. Under *McDonnell-Douglas*, to establish a prima facie case a plaintiff must show that he is a member of a protected class, that he was meeting his employer's legitimate expectations; that he suffered an adverse employment action, and that similarly situated individuals were treated more favorably than he was. In addition, when a plaintiff is a member of a "majority"—for instance, a male plaintiff alleging gender discrimination—we have said he must set out "background circumstances" that show that the employer discriminates against the majority, or he must show there is something "fishy" going on. *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003) (quoting *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993)); *see also Gore v. Indiana Univ.*, 416 F.3d 590, 592 (7th Cir. 2005). Once a prima facie case is established, the employer must provide a nondiscriminatory reason for the employment action; if it does, the plaintiff then must show that the reason is pretextual.

The goal of these tests is to determine whether discrimination is afoot. In this case, neither test reveals discrimination. It is not even entirely clear that Farr's claim alleges sex discrimination in the adverse employment action; that is, that he was fired because he was a

male. His primary complaint seems to be that he was the first person investigated because there were adult pornography sites involved and he was the only man in the department. That complaint would have more force if it were not also true that he was the person logged on to the computer at the time the sites were visited. It seems quite sensible (and hardly discriminatory) to begin an investigation with the person who officially was logged on to the computer. But the fact remains that even if the Hospital had, without any basis, turned to him first, that action would not establish discrimination—that he was fired because of his gender. It is pretty clear that he was fired because the investigation convinced the employer that he was the one accessing the inappropriate Web sites. In fact, he admitted it. Such activities provide a nondiscriminatory basis for the employer's action. Farr does not show in any way that the employer's belief was pretextual.

Other failures of proof include a lack of suspicious timing or ambiguous statements. He fails to show that, for instance, a woman accessing inappropriate Web sites was not fired or that the stated reason for his being fired is pretextual. He has not shown anything "fishy" about the facts. Neither did the Hospital simply rely on the fact that he was the person logged on to the computer when the Web sites were accessed; rather, the Hospital went out of its way to be sure that, in fact, he was the one using it at the time. He also complains that the investigation stopped once the Hospital determined that he had accessed the sites. Not only would that not be

discriminatory, it is not true. At the initial meeting with Farr, when he denied accessing the sites, the Hospital proceeded to investigate further and ultimately looked to see whether anyone else had accessed inappropriate sites. Even had the investigation stopped once the Hospital believed it had found the culprit, that would not have indicated that Farr was fired because he was a male.

The bottom line is that Farr admits that he visited some of the inappropriate Web sites. The Hospital says that is why he was fired, and he has done nothing to show otherwise.

In addition, Farr's state law claims were properly dismissed. He claims the employee handbook gave him the right to be treated fairly, but that he wasn't—in breach of the covenant of fair dealing. Indiana, however, adheres to the employment-at-will doctrine, and Farr was an at-will employee. Evaluated under Indiana law, the Hospital's employee handbook does not change the nature of Farr's employment. As we recognized in *Peters v. Gilead Sciences, Inc.*, 533 F.3d 594 (7th Cir. 2008), the Indiana Supreme Court has entertained a challenge to the at-will doctrine based on an employee handbook, but rejected the challenge and concluded:

> We re-affirm the vitality of the employment-at-will doctrine in Indiana and the general rule that adequate independent consideration is necessary to convert an at-will relationship into an employment relationship requiring an employer to discharge an employee for good cause. We decline plaintiffs' invitation to construe employee handbooks as unilateral contracts

and to adopt a broad new exception to the at-will doctrine for such handbooks.

*Orr v. Westminster Vill. North, Inc.*, 689 N.E.2d 712, 722 (Ind. 1997). As we noted in *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1001 (7th Cir. 2000), "Employment at will is the norm in the United States."

The court in *Orr* also made clear that even were it to find an exception to the at-will doctrine (and it did not), there would, nevertheless, be no implied contract when the handbook itself states it is not a contract. In *Orr*, the handbook contained a "prominent disclaimer." In the case before us, the Hospital handbook also contains a disclaimer:

> [The handbook] is presented as a matter of information only. This handbook is not part of a contract, and employees of the hospital have no contractual right to matters set forth.

Farr's claim based on the handbook was properly dismissed.

Lastly, Farr claims that the Alverno report is defamatory. The problem is, however, that the report was used during the grievance proceedings that Farr initiated and in response to a report Farr submitted. In such a situation, statements made by the company to explain its actions are privileged. In fact, the employer has a duty to explain its actions. *See Ernst v. Indiana Bell Tel. Co.*, 475 N.E.2d 351 (Ind. Ct. App. 1985). Relying on *Bals v. Verduzco*, 600 N.E.2d 1353 (Ind. 1992), Farr argues that the privilege is qualified, not absolute. We need not decide what sort

of privilege applies. In this case, the nature of the privilege is not dispositive; Farr's claim is properly dismissed under either standard.

The judgment of the district court is AFFIRMED.