Gloria J. HAYES, Appellant–Plaintiff,

v.

THE TRUSTEES OF INDIANA
UNIVERSITY, Appellee–
Defendant.

No. 53A01–0808–CV–375.

Court of Appeals of Indiana.

March 11, 2009.

Rehearing Denied May 27, 2009.

Rudolph Wm. Savich, Bloomington, IN, Attorney for Appellant.

Darla S. Brown, Kelley, Belcher & Brown, Bloomington, IN, Attorney for Appellee.

**OPINION**

DARDEN, Judge.

### STATEMENT OF THE CASE

Gloria J. Hayes appeals the trial court's entry of summary judgment in favor of the Trustees of Indiana University (the "University").

We affirm.

### ISSUES

1. Whether the trial court abused its discretion in granting the University's motion to strike portions of Hayes' opposing affidavit.

2. Whether the trial court erred in granting summary judgment to the University.

### FACTS

Hayes commenced employment with the University in 1967, working for Indiana University Press. In October of 1971, she transferred to the Dean's Office at the Indiana University School of Medicine in Indianapolis (the "School of Medicine"). In June of 2004, she was working as an Administrative Assistant to Dr. Lyn Means in the School of Medicine.

The University classified Hayes as a professional non-exempt employee, and she was an at-will employee. She admittedly did "not have a signed contract" with the University. (App.221). On a yearly basis, the University notified Hayes in writing of her salary rate. The notices read: "This salary notice does not constitute a contract." *Id.* at 226–32.

In May of 2002, the University issued its Human Resources Manual Policies For

Appointed, Biweekly-and Monthly–Paid Staff Employees on the IUPUI Campus (the "Human Resources Manual") to employees. The Human Resources Manual applied to Hayes. The Human Resources Manual contained the following disclaimer: "The language used in this manual should not be construed as creating a contract of employment between Indiana University and any employee." *Id.* at 273. It further advised that "[a]t any time, the [U]niversity reserves the right to modify, to change, to suspend, or to cancel all or any part of the policies, procedures, and programs contained in this manual." *Id.* at 24.

The Human Resources Manual defined an "occupational unit" as "a functional classification within a campus department or subunit of a department." *Id.* at 80. It defined "occupational unit seniority date" as the date "when an employee began continuous employment in the current occupational unit." *Id.* at 79.

Regarding position classification, the Human Resources Manual provided, in part, as follows:

> Positions are classified into the most appropriate job and are identified with that job's distinguishable characteristics, including the job evaluation results and assignment to a grade level. *The university reserves the right to eliminate, change, and establish classification levels and salary grades.*
>
> \* \* \*
>
> *Disagreements over classification level assignments are not subject to the grievance procedure.*
>
> \* \* \*
>
> *Disagreements of appeal results over classification level assignments are not subject to the grievance procedure.*

*Id.* at 52–53 (emphasis added). Rather, position classifications were to be appealed through a separate procedure.

In the event of a permanent reduction-in-force ("RIF"), the Human Resources Manual provided that "[w]henever a senior employee's position is eliminated, the employee may exercise his or her occupational unit seniority to bump a less senior employee (at the same rank or lower), provided the senior employee is qualified for the job and can perform the work at a full performance level." *Id.* at 82.

Finally, regarding the resolution of grievances, it provided that "[a]ll staff have the right to use the procedure contained in this policy and the right to obtain representation, if desired." *Id.* at 144. It further outlined the four stages for pursuing a grievance. Stage 1 constituted the initiation, while the three latter stages constituted the appeals process. Again, the Human Resources Manual exempted disagreements over classification level assignments from the grievance procedure. Furthermore, the Human Resources Manual only provided for a Stage 4 appeal if the grievance involved "a violation of the university's human resources policies or a charge of unfair employment termination. . . ." *Id.* at 146. According to the Human Resources Manual, "[j]udgments such as ... classification assignments ... are not considered violations of human resources policies." *Id.*

Regarding the termination of an employee, the notice of termination "is regarded as a final decision of Settlement Stage 1"; therefore, "the grievance goes directly to Stage 2." *Id.* at 145. In order to initiate an appeal at Stage 2, an employee must appeal "to the supervisor's dean or director or designee." *Id.* at 146. In the event the employee regarded the outcome of Stage 2 unsatisfactory, a Stage 3 appeal required the employee to "make the appeal

to the Assistant Vice Chancellor of Human Resources. . . ." *Id.*

The Human Resources Manual provided that, when pursuing a grievance, matters must be presented "[s]olely by the employee"; "[s]olely by a representative of the employee's choice"; or "[b]y the employee in the company of a representative of the employee's choice[.]" *Id.* at 145. However, "[p]rior to Stage 4, the representative cannot be an attorney." *Id.*

On or about March 12, 2004, Deborah Cowley, the Director of Academic Administration and Human Resources Services for the School of Medicine, notified Hayes that, effective June 30, 2004, the University would be eliminating her position due to a RIF. As Hayes satisfied certain age and length-of-service requirements, the University offered her early retirement under the University's IU PERF Early Retirement Incentive.

On or before March 25, 2004, Hayes retained counsel. On March 26, 2004, Hayes filed a grievance with Cowley.[1] On March 30, 2004, the University's counsel informed Hayes' counsel that there were no less-senior employees within her occupational unit.

On March 31, 2004, Hayes had tendered notice of her intention to retire under the early retirement incentive, effective June 30, 2004. The University subsequently informed Hayes that any grievances based on the employment classification of other employees were prohibited and that the voluntary election of early retirement would render any grievance moot. Hayes did not seek to rescind her election of early retirement.

Hayes filed a complaint against the University on June 30, 2006. On May 24, 2007, she filed an amended complaint, alleging breach of contract for failing to give her thirty-days notice that her employment was being terminated due to a reduction in staffing "before forcing her to make a decision to accept or reject the early retirement package"; failing to honor her "seniority status or so-called 'bumping rights' in terminating" her employment; "fail[ing] and refus[ing] to follow the established grievance procedure" by asserting that her forced retirement "mooted the grievance procedure"; and "fail[ing] and refus[ing] to follow the established grievance procedure" by asserting that she "could not challenge the employment classification of other employees in attempting to establish her own bumping rights through the grievance procedure." *Id.* at 20–21.

Hayes also sought judicial review of her employment termination, arguing that common law provides for judicial review of the University's actions as "an agency or arm of the State of Indiana." *Id.* at 21. Finally, she sought a mandate, compelling the provision of certain grievance procedures. The University filed its answer on June 15, 2007.

On December 4, 2007, the University filed its motion for summary judgment and memorandum of law in support thereof. It designated as evidence a copy of its Human Resources Manual; the affidavit of Deborah Cowley; Hayes' responses to request for admissions; and portions of Hayes' deposition.

The University asserted, *inter alia*, that Hayes' breach of contract claim must fail

---

1. Thus, Hayes appealed her termination to Stage 2. It appears from the record that Cowley responded to Hayes' grievance on or about March 29, 2004. The parties, however, have not provided a copy of this response. It also appears that Hayes subsequently met with Cowley and "request[ed] a grievance based on the [U]niversity's employment classification decision for individuals other than [Hayes.]" (App.258).

because she relied on the Human Resources Manual for her breach of contract claim, "and it is clear from the language of the [Human Resources Manual] that there was no contract." *Id.* at 194. It further asserted that "Hayes cannot go forward on her complaint for judicial review because the AOPA [Administrative Orders and Procedures Act] does not apply to universities, colleges or other educational institutions" and specifically excludes political subdivisions. *Id.* at 198. It further asserted that Hayes "failed to timely file her petition for judicial review . . ." *Id.* at 199. Regarding Hayes' action in mandate, the University asserted that "[t]he grievance procedure was rendered moot by [her] retirement," and "she is not entitled to pursue a petition for mandate when she has other adequate remedies at law." *Id.* at 202.

Hayes filed her response on January 7, 2008. She designated as evidence her affidavit. Regarding her breach of contract claim, she argued that although the Human Resources Manual "did not create a contract of employment for a definite period of time, nor a contract which could only be terminated for just cause, it did create clear, enforceable bumping rights and a mandatory procedure for enforcing same." *Id.* at 266.

On February 5, 2008, the University filed a motion to strike portions of Hayes' affidavit and exhibits thereto. The trial court granted the University's motion on May 28, 2008. Also on May 28, 2008, the trial court entered its order, finding as follows:

*Plaintiff's Breach of Contract Claim*

1. It is undisputed that the [Human Resources Manual] contains the following sentence in the Introductory section of the manual:

*Language used in this Manual should not be constructed as creating a contract of employment between Indiana University and any employee.*

2. An employee handbook containing the disclaimer that the handbook does not constitute a contract cannot constitute a valid unilateral contract as a matter of law. Furthermore, an employee handbook cannot constitute a valid unilateral contract in the absence of adequate consideration.

3. [Hayes'] breach of contract claim fails because there was no contract of employment between her and the [University].

4. The language in the Human Resources Manual is not ambiguous. However, even if the language in the Human Resources Manual were ambiguous, such ambiguity should not be held against the [University] because principles of contract construction and interpretation only apply if the document in question is in fact a contract.

5. [Hayes] testified during her deposition that she was an employee-at-will when she was employed as an administrative assistant to Dr. Lyn Means at the [School of Medicine].

6. In [*Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 721–22 (Ind.1997)], the Indiana Supreme Court re-affirmed the vitality of the employment at-will doctrine in Indiana.

7. Historically, Indiana has recognized two forms of employment: employment for a definite or ascertainable term and employment at-will.

8. As [Hayes] was an employee at-will, if she has an employment claim against [the] University for an adverse employment decision, it must lie in tort.

9. [Hayes'] claim is subject to the notice requirement of the Indiana Tort Claims Act. A tort claim against a politi-

cal subdivision is barred unless notice is filed with the governing body [of] that political subdivision within 180 days after the loss occurs.

10. State education institutions such as the [University] are political subdivisions for purposes of the Indiana Tort Claims Act.

11. It is undisputed that [Hayes] did not file a tort claims notice with the [University] at any time.

12. Any tort claim that [Hayes] may have had against the [University] is therefore barred for failure to comply with the Indiana Tort Claims Act.

13. [Hayes] has presented no evidence that the [University] failed to follow its own policies. Her materials submitted in Opposition to the [University]'s Motion for Summary Judgment show that she was the only employee in her occupational unit. She could not have exercised seniority status, or "bumping rights," over any other employee.

14. [Hayes] cannot create a genuine issue of material fact by arguing that the [University] improperly classified ten (10) other employees because the Human Resources Manual states that disagreements over classification assignments are not subject to the grievance procedure.

15. The undisputed fact is that [Hayes] could not have exercised her seniority status, or "bumping rights," over another employee as she claims.

16. The [University] is therefore entitled to summary judgment on the first count of [Hayes'] complaint.

*[Hayes'] Petition for Judicial Review*

17. The exclusive means for judicial review of a final agency action was established by [the AOPA].

18. The scope of review set forth in the AOPA is the proper scope of judicial review for the actions of governmental agencies.

19. The AOPA establishes the exclusive means for judicial review of agency actions.

20. The function of the trial court in an administrative agency action review is strictly controlled by the AOPA.

21. If [Hayes] is entitled to judicial review at all, she is entitled to judicial review under the AOPA and not pursuant to common law.

22. However, [Hayes] cannot move forward on her petition for judicial review because the AOPA does not apply to universities, colleges or other educational institutions whose purposes are to provide collegiate, university, or post-secondary education and which are supported in whole or in part by appropriations . . . made by the general assembly.

23. [The] University is not [an] agency whose decisions are subject to the AOPA.

24. Therefore, Hayes is not entitled to judicial review and the [University] is entitled to summary judgment on the second count of [Hayes'] complaint.

*[Hayes'] Action for Mandate*

25. Ind.Code § 34–27–3–1 reads as follows:

Sec. 1. An action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate office, or person to compel the performance of any:

(1) Act that the law specifically requires; or

(2) Duty resulting from any office, trust, or station.

26. Mandate is an extraordinary remedy; the party requesting mandate must

have a clear and unquestioned legal right to the relief sought and must show that the respondent has an absolute duty to perform the act demanded.

27. Orders of mandamus should not be issued to control the discretionary action of a public officer, board, or commission.

28. Mandates are reviewed with extreme disfavor, and meant to accomplish what cannot be otherwise accomplished through ordinary legal or equitable remedies.

29. [Hayes] seeks not to establish rights pursuant to a statute or duty resulting from any office, trust, or station, but to adjudicate her rights under the [University]'s grievance policy.

30. [The] University's decision to terminate [Hayes'] employment pursuant to a reduction in force was not quasi-judicial in nature and therefore not subject to mandate.

31. The [University] is entitled to summary judgment on Count III of [Hayes'] complaint.

*Id.* at 8–12) (citations omitted). Accordingly, the trial court entered judgment in favor of the University. On June 25, 2008, Hayes filed a motion to correct error, which the trial court summarily denied.

### DECISION

### 1. *Motion to Strike*

■ Hayes asserts that the trial court erred in granting the University's motion to strike portions of her affidavit.

The decision to admit or exclude evidence lies within the sound discretion of the trial court. The trial court's determination is afforded great discretion on appeal. To that end, we will not reverse the trial court's decision absent a showing of manifest abuse of discretion. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it.

Affidavits in support of or in opposition to a motion for summary judgment are governed by Indiana Trial Rule 56(E), which provides, in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The requirements of T.R. 56(E) are mandatory; hence, a court considering a motion for summary judgment should disregard inadmissible information contained in supporting or opposing affidavits. Further, the party offering the affidavit into evidence bears the burden of establishing its admissibility.

*City of Gary v. McCrady,* 851 N.E.2d 359, 363 (Ind.Ct.App.2006) (citations omitted).

Here, the trial court excluded paragraphs 9–12, 15, and 18, in which Hayes averred as follows:

9. ... I had worked for Indiana University for 37 years and was of the understanding that employees with less seniority would be subject to loss of their employment pursuant to a reduction in force before I would lose my job. The concept of a senior employee having preference over an employee with less seniority with regard to a reduction in force is referred to as "bumping rights." According to my understanding of bumping rights, I should have been given the opportunity to assume the job of any one of a number of employees within the Office of the Dean of the Medical School with less seniority, including, for example, but not limited to: Kathleen Boles, Trullina Carman, Kelly Smith, MA. Cowley, CH. Borud, Diana Power,

Lisa Polen, Amy Jean Sayre, Marie Brunsman, and Molly Eaton.

10. My husband and I met with W. Jack Hudson of University Human Resources Services in Bloomington. I am not sure of the exact date we met with Jack Hudson. From reading over the various correspondence which was generated as a result of our meeting, it appears that we probably met with Jack Hudson on or before March 25, 2004. In the meeting, I explained my dilemma to Mr. Hudson. I told him that I felt I should have bumping rights within my office and that I was pursuing a grievance. I told him that I did not want to take early retirement, but that if the grievance was not successful and I was going to lose my job through the reduction in force, I would have to take the early retirement package. Mr. Hudson understood my problem and offered me a solution. He told me to sign the early retirement election form dated as of March 31, 2004 and let him hold it. He promised that he would give me until April 9, 2004 to pursue my grievance. If the grievance was successful, he would allow me to rescind the early retirement and it would be treated as if I had not signed and turned in the early retirement election form.

11. After the meeting with Jack Hudson, I informed my attorney, Michael Bonnell, that Mr. Hudson had agreed to an extension. On March 25, 2004, Mr. Bonnell wrote a letter to Mr. Hudson confirming the terms of the extension agreement. Mr. Bonnell's letter requested that Mr. Hudson sign the letter and fax it back to Mr. Bonnell indicating that we had, in fact, agreed to an extension of the early retirement deadline until April 9, 2004. A copy of the letter of March 25, 2004 from Michael Bonnell to W. Jack Hudson bearing Mr. Hudson's signature indicating agreement is attached hereto and marked as Exhibit "C".

12. On March 25, 2004, my attorney wrote a letter to Deborah K. Cowley, asking to verify certain facts which, if true, would establish my bumping rights. The letter also indicated that I intended to pursue a formal grievance of the RIF Notice. A copy of the letter from Mr. Bonnell is attached hereto as Exhibit "D".

* * *

15. Mr. Bonnell responded to Exhibit "F" with a letter dated April 2, 2004, a copy of which letter is attached hereto and marked as Exhibit "G".

* * *

18. On May 7, 2004, my attorney responded to Joseph Scodro with a letter in which he contended that my grievance was not moot and asking that he provide a response to my second step grievance. A copy of the letter of May 7 is attached hereto and marked as Exhibit "I".

(App.237–39). The trial court also excluded Exhibits C, D, G, and I.

■ Regarding paragraph 9, Hayes failed to establish a foundation for her having personal knowledge of the other employees' seniority, occupational units, or qualifications. Thus, we find no abuse of discretion in striking that paragraph.

■ In paragraph 10, Hayes averred that Hudson "promised that he would give [her] until April 9, 2004 *to pursue [her] grievance.*" *Id.* at 238 (emphasis added). In her deposition, however, Hayes testified that Hudson gave her until April 9, 2004, to rescind her notice that she was *electing*

*early retirement.*[2] She also admitted that she never sought to rescind her notice of early retirement. As paragraph 10 of Hayes' affidavit contradicts her sworn testimony, we find no abuse of discretion in striking it. *See Morgan County Hosp. v. Upham,* 884 N.E.2d 275, 281 (Ind.Ct.App. 2008) (stating that a genuine issue of material fact may not be created by submitting an affidavit that contradicts earlier sworn statements), *trans. denied.*

■ Regarding the remaining stricken paragraphs and the exhibits to which those paragraphs refer, Indiana Trial Rule 56(E) provides that "[s]worn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Thus, "a court will not consider unsworn and unverified attachments in opposition to a motion for summary judgment." *Duncan v. Duncan,* 764 N.E.2d 763, 766 (Ind.Ct.App.2002), *trans. denied.* Our review of the record reveals that the exhibits were not properly verified. We therefore find no abuse of discretion in striking these portions of Hayes' affidavit.

2. *Summary Judgment*

Hayes asserts that the trial court erred in granting the University's motion for summary judgment. Specifically, she argues that she was entitled to assert her "bumping rights" pursuant to the Human Resources Manual; that the Indiana Tort Claims Act (the "Act") does not apply; that she is entitled to judicial review; and mandate is the appropriate remedy.

■ When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Landmark Health Care Assocs., L.P. v. Bradbury,* 671 N.E.2d 113, 116 (Ind.1996). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Ind. T.R. 56(C); *Blake v. Calumet Const. Corp.,* 674 N.E.2d 167, 169 (Ind.1996). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct.App.1991). All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996). However, once the movant has carried his initial burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. *Otto v. Park Garden Assocs.,* 612 N.E.2d 135, 138 (Ind.Ct.App. 1993), *trans. denied.* If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted. *Id.*

---

**2.** Hayes designated a letter from her attorney to Hudson. Although the trial court properly excluded this letter, we note that it sets forth the agreement between Hudson and Hayes as "extend[ing] the deadline for application for early retirement from March 31, 2004 to April 9, 2004." (App.250). This seems to contra- dict both Hayes' affidavit—in which she states that Hudson gave her until April 9, 2004, to pursue her grievance, and her deposition testimony—in which she stated that Hudson gave her until April 9, 2004, to rescind her notice of retirement.

■ "Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts." *Mills v. Berrios,* 851 N.E.2d 1066, 1069 (Ind.Ct.App.2006) (quoting *Bennett v. CrownLife Ins. Co.,* 776 N.E.2d 1264, 1268 (Ind.Ct.App.2002)). We review a question of law de novo. *Id.* "Finally, if the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we will affirm." *Beck v. City of Evansville,* 842 N.E.2d 856, 860 (Ind.Ct. App.2006), *trans. denied.*

### 1. *Breach of contract*

Hayes contends that summary judgment on her breach of contract claim was improper because the Human Resources Manual was a contract which conferred "bumping rights" upon her. We disagree.

■ In *Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 722 (Ind. 1997), the Indiana Supreme Court "re-affirm[ed] the vitality of the employment-at-will doctrine in Indiana and the general rule that adequate independent consideration is necessary to convert an at-will relationship into an employment relationship requiring an employer to discharge an employee for good cause." It further declined "to construe employee handbooks as unilateral contracts and to adopt a broad new exception to the at-will doctrine for such handbooks." *Id.*

Given our Supreme Court's holding in *Orr,* we decline to find that the Human Resources Manual constituted a contract under which Hayes could maintain a breach of contract claim. Additionally, Hayes admitted that she "did not have a signed contract" with the University and agreed that she was an "employee at will." (App.221, 220). We therefore find no error in finding, as a matter of law, that Hayes could not maintain a breach of contract claim against the University.

Hayes, however, asserts that the Human Resources Manual's language meets the requirements set forth in *Duldulao v. Saint Mary of Nazareth Hosp. Center,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 318 (1987), and considered in *Orr,* thereby creating an exception to the employment-at-will doctrine. Regarding that Illinois case, the Indiana Supreme Court found:

> Under the *Duldulao* rule, an employee handbook may constitute a unilateral contract and bind the employer if the following three criteria are met: (1) the language of the employee handbook must contain "a promise clear enough that an employee would reasonably believe that an offer had been made;" (2) the employee handbook must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing work after learning of the terms of the employee handbook.

*Orr,* 689 N.E.2d at 720.

Our Supreme Court, however, refused to recognize an exception to the rule that an employee handbook does not constitute an unilateral contract. Rather, it only determined "even if [it] were to conclude that an employee handbook, under some circumstances, can constitute a valid unilateral contract in the absence of adequate independent consideration," the employee handbook in question did not. *Orr,* 689 N.E.2d at 720. Specifically, it found that not only did the employee handbook fail to satisfy *Duldulao's* three requirements, but it also contained a disclaimer, which "clearly state[d] that the Handbook is not a contract and that its terms can be changed

at any time."[3] *Id.* at 721. Our Supreme Court concluded that "even under the *Duldulao* rule, an employee handbook bearing or accompanied by such disclaimers, particularly when the employee signs one of the disclaimers, generally, as a matter of law, does not create a unilateral contract." *Id.*

In this case, the Human Resources Manual specifically provided that "[t]he language used in this manual should not be construed as creating a contract of employment between Indiana University and any employee." (App.24). It further provided that "[a]t any time," the University "reserves the right to modify, to change, to suspend, or to cancel all or any part of the policies, procedures, and programs contained in this manual." *Id.*

Thus, even if we adopted a new exception to Indiana's at-will doctrine, we cannot say that there is an issue of material fact as to whether the Human Resources Manual constituted a unilateral contract. *See also McCalment v. Eli Lilly & Co.,* 860 N.E.2d 884, 893 (Ind.Ct.App.2007) (finding that despite language in the handbook promising fair treatment of employees, the handbook could not be construed as containing "a promise clear enough that an employee would reasonably believe that an offer of other than at will employment had been made" where *Orr* reaffirmed "the validity of the at will doctrine and the disclaimer"); *Burke v. Bd. of Dir. of Monroe County Public Library,* 709 N.E.2d 1036, 1042 (Ind.Ct.App.1999) (finding employee to be an at-will employee where the personnel handbook specified that "it is not intended to describe or create a contractual relationship between the Monroe County Public Library and any of its em-

ployees" (emphasis omitted)), *modified in part on reh'g, trans. denied.*

Hayes also asserts that she was entitled to enforce her "bumping rights" because at-will employment by its nature creates a contractual relationship. *See* Hayes' Br. at 9. Hayes has waived this argument due to failure to raise it before the trial court. *See Van Winkle v. Nash,* 761 N.E.2d 856, 859 (Ind.Ct.App.2002) ("Failure to raise an issue before the trial court will result in waiver of that issue.").

Hayes also argues that "[d]enying [her] the bumping rights provided in the [Human Resources] Manual because she did not have a[n] employment contract for a definite time period would be incorrect" because "[e]ven in an at-will employment, rights earned by laboring under an employment arrangement become vested and cannot be unilaterally withdrawn by the employer." Hayes' Br. at 13. In support thereof, she cites to *Haxton v. McClure Oil Corp.,* 697 N.E.2d 1277 (Ind.Ct.App. 1998) and *Ten Cate Enbi, Inc. v. Metz,* 802 N.E.2d 977 (Ind.Ct.App.2004). Again, Hayes failed to raise this issue at the trial court level; therefore, it is waived. *See Van Winkle,* 761 N.E.2d at 859. Nonetheless, the cases she cites do not support her proposition as the employees in those cases had entered into employment agreements.

We conclude that the University was entitled to summary judgment as a matter of law on Hayes' breach of contract claim as she was an at-will employee, and the Human Resources Manual did not constitute a contract. As we do not find that the Human Resources Manual contractually bound the University, we need not address whether Hayes' purported "bumping

---

**3.** The handbook in *Orr* read: "Its contents represent an official statement of the facility policy; however, the handbook is not a con-

tract with the facility because it is subject to change." 689 N.E.2d at 715–16 (citation omitted).

rights" under the Human Resources Manual were breached.

### 2. *Indiana Tort Claims Act*

 Hayes asserts that the trial court erred in finding that her claim for breach of contract is subject to the notice requirement of the Act. She argues that "the notice provisions of the Tort Claims Act have no application to" her case as it "is not only captioned a claim for breach of contract, but also, is substantively a claim for breach of enforceable contractual obligations. . . ." Hayes' Br. at 17–18.

The Act applies to claims or suits in tort. Ind.Code § 34-13-3-1. The University is a "state educational institution," and therefore a political subdivision for purposes of the Act. *See* I.C. §§ 21-7-13-20; 34-6-2-110. Governmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the Act applies. I.C. § 34-13-3-3; *Burke,* 709 N.E.2d at 1040. However, a tort claim against a political subdivision is barred unless notice is filed with "the governing body of that political subdivision . . . within one hundred eighty (180) days after the loss occurs." I.C. § 34-13-3-8.

Hayes cannot maintain a breach of contract claim against the University as she did not have a contractual relationship with the University. Thus, any possible tort claim she may have related to the RIF would sound in tort. *See Burke,* 709 N.E.2d at 1042 (holding that the employee-at-will's claim sounds in tort). Accordingly, it was incumbent upon Hayes to file notice of her claim within 180 days after her loss. This she did not do; therefore, any possible tort claim against the University is barred.

### 3. *Judicial Review*

 Hayes contends that the trial court improperly found that she was not entitled to judicial review. Specifically, she argues that "the fact that [the] AOPA does not provide a statutory means of seeking judicial review of [the] University's actions does not mean the University is immune from judicial review." Hayes' Br. at 18.

The AOPA, Indiana Code sections 4-21.5-1-1 through 4-21.5-7-9, governs the orders and procedures of state administrative agencies. Chapter 5 of the AOPA "establishes the *exclusive* means for judicial review of an agency action." I.C. § 4-21.5-5-1 (emphasis added). Our Legislature, however, has specifically excluded state educational institutions, such as the University, from the AOPA's application. *See* I.C. § 4-21.5-2-5.

In *Blanck v. Ind. Dep't of Corr.,* 829 N.E.2d 505 (Ind.2005), Blanck, an inmate in the Department of Correction, filed a complaint, asserting that, pursuant to the Indiana Constitution and Indiana Code, he was entitled to judicial review of the discipline imposed upon him by the Department of Correction. Finding that no provision of the Indiana Code entitled him to judicial review, the Indiana Supreme Court held that his complaint should be dismissed for lack of subject matter jurisdiction. In so finding, our Supreme Court looked to the AOPA. It determined that the AOPA established the exclusive means for judicial review of agency actions "highly analogous to the disciplinary action challenged" by Blanck. 829 N.E.2d at 510. It noted, however, that the Legislature "specifically excluded from the AOPA's application any 'agency action related to an offender within the jurisdiction of the department of correction.' " *Id.* (quoting Indiana Code section 4-21.5-2-5(6), which provides that the AOPA does not apply to an "agency action related to

an offender within the jurisdiction of the department of correction"). Our Supreme Court therefore "conclude[d] that the clear intent of the Legislature here is to deny to inmates charged with or found guilty of misconduct the procedure specified in the AOPA, including judicial review." *Id.*

We find *Blanck* to be analogous to this case. Here, the Legislature specifically excluded the University from the AOPA's application. Thus, it clearly intended to exclude the actions of the University from judicial review. We therefore find that the trial court properly granted the University's motion for summary judgment on Hayes' complaint for judicial review.

### 4. *Mandate*

Hayes asserts that the trial court improperly granted summary judgment on her action for mandate. She argues that mandate is an appropriate means of obtaining an order directing the University to "provide stage 2, 3 and 4 grievance procedures" as required by the Human Resources Manual. (App.23).

■ Indiana Code section 34–27–3–1 provides:

An action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any:

(1) act that the law specifically requires; or

(2) duty resulting from any office, trust, or station.

We have held that

"[a]n action for mandate, an extraordinary remedy of an equitable nature, is generally viewed with disfavor." "Man-

damus does not lie unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law." "*[T]he mandamus action does not lie to establish a right or to define and impose a duty.* Public officials, boards, and commissions may be mandated to perform ministerial acts when under a clear legal duty to perform such acts."

*Perry v. Ballew,* 873 N.E.2d 1068, 1072 (Ind.Ct.App.2007) (citations omitted) (emphasis added), *reh'g denied.* "Put another way, mandate orders will not be granted to control the discretionary action of a public officer, board, or commission." *Harmony Health Plan of Indiana, Inc. v. Indiana Dep't of Admin.,* 864 N.E.2d 1083, 1089 (Ind.Ct.App.2007). "[A]n honest exercise of that discretion will not be disturbed by the courts." *Id.*

■ In support of her claim that the Human Resources Manual has "the force of law," Hayes' Br. at 19, thereby compelling the University to act on the grievance procedures contained therein, Hayes cites to *Lincoln v. Bd. of Comm'r of Tippecanoe County,* 510 N.E.2d 716 (Ind.Ct.App.1987). In that case, Lincoln, a courthouse custodian, appealed an executive decision of the Board of Commissioners of Tippecanoe County (the "Board") discharging her from employment. Pursuant to Indiana Code section 36–2–2–27,[4] she filed her appeal in the Tippecanoe Circuit Court. The Board filed a motion to dismiss, arguing that her appeal was untimely. Following a hearing, the trial court denied Lincoln's appeal and granted the Board's motion to dismiss.

Lincoln appealed the trial court's ruling, arguing "that the final decision affirming

---

4. Indiana Code section 36–2–2–2 provides that "[t]he three (3) member board of commissioners of a county elected under this chapter is the county executive." Pursuant to Indiana Code section 36–2–2–27, "[a] party to

a proceeding before the executive who is aggrieved by a decision of the executive may appeal that decision to the circuit court for the county."

her discharge made by the [Board] is quasi-judicial in nature and therefore she is entitled to appeal the Board's determination, under I.C. 36–2–2–27, to the Circuit Court." 510 N.E.2d at 718–19. The Board responded that the " 'decision to terminate or not to terminate an employee by the employer could not possibly be determined a judicial function, but rather must be one of administration in the performance of the job description and duties of the particular employee.' " *Id.* at 719 (citation omitted). It relied on Indiana's "well-settled" rule that "[o]nly 'judicial decisions' of the county board of commissioners may be appealed to the circuit court"; therefore, "[a]ny act which is administrative, ministerial, discretionary, or legislative in nature is not reviewable." *Id.*

This court found that the Board was acting in a quasi-judicial capacity when, pursuant to its grievance procedures, it

provided notice to the parties, permitted the parties to be represented by counsel, convened a formal hearing, took evidence, judged the credibility of the witnesses and weighed the evidence, and then made a decision to affirm the administrator's decision to discharge an employee. Lincoln's right to challenge her discharge on its merits was adjudicated by the Board, and a decision was rendered against her.

*Id.* at 721–22 (footnote omitted). We therefore concluded that Indiana Code section 36–2–2–27 provided Lincoln the right of appeal of the Board's decision to the circuit court. *See id.* at 722.

Contrary to Hayes' assertion, we cannot say that either the University's decision to eliminate Hayes' position pursuant to a reduction in force or its classification of Hayes' position was made in a quasi-judicial capacity. Accordingly, the University's decisions regarding these matters are not subject to a mandate order. *See Harmony,* 864 N.E.2d at 1089.

Furthermore, Hayes' complaint does not seek to compel a specific "act" on the part of the University. Rather, she merely seeks to compel the University to submit to the grievance procedures outlined in the Human Resources Manual. A mandate order is not the proper vehicle for compelling adherence to such a request. *See State ex rel. Steinke v. Coriden,* 831 N.E.2d 751, 758 (Ind.Ct.App.2005) (holding that it is not within the purview of the courts to issue a writ of mandate compelling adherence to rules pertaining to general requirements, as opposed to compelling the performance of specific acts), *trans. denied.* We therefore find that the trial court properly granted the University's motion for summary judgment on Hayes' request for a mandate.

Affirmed.

RILEY, J., and MATHIAS, J., concur.