ESTATE OF Christine L. NETERER,
Deceased,

Deborah Pollock and Marilyn Hum-
barger, Co–Personal Represen-
tatives, Appellants,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Appellee.

No. 49T10–1006–TA–26.

Tax Court of Indiana.

Nov. 21, 2011.

John William Davis, Jr., Davis & Roose, Goshen, IN, Attorney for Appellants.

Gregory F. Zoeller, Attorney General of Indiana, Jonathan E. Lamb, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

FISHER, Senior Judge.

Deborah Pollock and Marilyn Humbarger, as personal representatives of the Estate of Christine L. Neterer (Estate), appeal the Elkhart Circuit Court's (probate court) entry of summary judgment against the Estate and in favor of the Indiana Department of State Revenue, Inheritance Tax Division (Department). On appeal, they raise one issue: whether the probate court erred in granting summary judgment in favor of the Department.[1]

## FACTS AND PROCEDURAL HISTORY

The following facts are not in dispute. Christine L. Neterer, an Indiana resident, died testate on September 18, 2006. At the time of her death, Neterer and her surviving sister each owned, as tenants in common, an undivided one-half interest in certain real property located in Elkhart County (hereinafter, "the subject property"). On October 19, 2006, an unsupervised estate was opened, Neterer's will was admitted to probate, and her nieces, Deborah Pollock and Marilyn Humbarger, were appointed as co-personal representatives.

On August 22, 2007, Pollock filed with the probate court the Estate's Indiana Inheritance Tax Return, attaching both an appraisal and a two-page document titled "Valuation of Decedent's Interest in Real Estate." (Appellants' Am.App. (hereinafter, "Appellants' App.") Vol. II at 22–31.) The appraisal provided that the fair market value of the subject property in its entirety was $855,250.[2] The Valuation of Decedent's Interest in Real Estate stated that it was necessary to reduce the subject property's appraised value by one-half, and then apply an aggregated discount of 30 percent (30%) to account for both a lack of marketability and a lack of control. As a result, the return reported that the fair

---

1. Certain information in this case has been filed as "not for public access" and is confidential. See Ind. Administrative Rule 9. Consequently, the Court's opinion provides only that information essential to the resolution of the case and as appropriate to develop the law. See Admin. R. 9(G)(3), (4)(d).

2. Philip J. Hahn, a real estate broker, appraiser, and auctioneer, prepared the appraisal.

market value of the subject property was $300,000.

The Elkhart County Assessor subsequently filed her Report of Appraiser, which indicated the return "correctly" valued the subject property. (*See* Appellants' App. Vol. II at 42.) Thereafter, Pollock filed an amended return and the Elkhart County Assessor issued another Report of Appraiser, accepting all of the valuations reported in the amended return.[3] On November 1, 2007, the probate court entered an Order determining that based on the accepted valuations, the Estate's inheritance tax liability was $31,937.98. The probate court forwarded a copy of its Order to the Department.

Approximately one month later, on December 10, 2007, the Department sent a letter to the Estate requesting additional information to facilitate its audit of the amended return. After receiving the information, the Department, on December 31, 2007, sent the Estate a "Notice of Additional Inheritance Tax Due" (Notice), stating that the value of the subject property was $427,625 and the Estate's actual inheritance tax liability was $45,224.48 because: 1) it had not reported the value of a life insurance policy in the return; 2) its deduction for monument expenses exceeded the statutory allowance for such deductions; and 3) it had not substantiated the propriety of the 30% discount. (*See* Appellants' App. Vol. II at 97.) As a result, the Department requested that the Estate remit an additional $13,278.64 in inheritance tax, plus interest.

On January 29, 2008, the Estate sent a letter to the Department explaining that while it had no "quibble" with the Depart-

ment's adjustments regarding the life insurance policy and the monument deduction, it disagreed with the disallowance of the 30% discount. (*See* Appellants' App. Vol. II at 101–03.) Nevertheless, the Estate offered to reduce the 30% discount by five percent. On February 11, 2008, the Department declined the Estate's offer and restated its request for the additional $13,278.64 in inheritance tax, plus interest. On February 13, 2008, the Estate paid the requested amount.

Over a year and a half later, on or about December 1, 2009, the Estate filed a claim with the Department contending that it was entitled to a refund of the additional inheritance tax it paid. On December 4, 2009, the Department denied the Estate's refund claim. On December 17, 2009, the Estate filed with the probate court a Complaint challenging the Department's denial of its refund claim. The Estate and the Department subsequently filed motions for summary judgment.[4]

In its motion, the Estate argued that to the extent the Department disagreed with the probate court's Order determining the Estate's inheritance tax liability, it was required to timely file with the probate court either a petition for rehearing or a petition for reappraisal. (*See* Appellants' App. Vol. II at 71–74.) As the Department did neither, argued the Estate, it had absolutely no authority to disallow the 30% discount because the probate court's Order of November 1, 2007, established "for all time" the amount of tax owed by the Estate. (*See* Appellants' App. Vol. II at 71; Appellee's Confidential Supp'l App. (hereinafter, "Appellee's App.") at 2–3, 6–7.)

---

**3.** The amended return included the fair market value of previously omitted stock, but did not adjust the subject property's valuation.

**4.** To support their respective summary judgment motions, both the Estate and the De-

partment designated the Estate's original inheritance tax return, the appraisal, and the Valuation of Decedent's Interest in Real Estate. The Estate also designated its amended inheritance tax return and the probate court's Order of November 1, 2007.

In its motion, the Department claimed that the probate court's Order was only a provisional estimate of tax due. (*See* Appellants' App. Vol. I at 119–21; Appellee's App. at 3–5.) The Department also explained that the Estate's appraisal was the best indicator of the subject property's fair market value because the Valuation of Decedent's Interest in Real Estate was unverified, unsigned, prepared by an anonymous person, and failed to disclose how the 30% discount was even calculated. (*See* Appellants' App. Vol. I at 123–26, 129; Appellee's App. 9–10.)

On May 20, 2010, after holding a hearing on the parties' motions, the probate court granted summary judgment in favor of the Department and against the Estate. In doing so, the probate court stated:

> A probate court's order determining tax due is considered a provisional estimate of the tax that the [Department] may accept. Furthermore, pursuant to Ind[iana] Code § 6–4.1–10–1, in order to qualify for a refund of taxes paid, [the Estate] must establish that the inheritance tax was erroneously or illegally collected by the Department. Here, the only evidence [the Estate] submitted in support of [its] determination that a discount to the fair market value of the real estate was appropriate or that the amount of the discount was computed properly was a document entitled "Valuation of Decedent's Interest in Real [E]state" whose maker is unknown. [The Department] determined that the discount was unsubstantiated and was not within the discretion of [the Estate] to take pursuant to Ind[iana] Code § 6–4.1–3–13. Therefore, it cannot be said that [the Department] erroneously or illegally made a determination that the discount was disallowed, that the additional tax was due[,] or that the denial of [the Estate's] claim for refund was im-

properly denied. Rather, the determination was substantiated and in accordance with the law. Accordingly, the court hereby determines that [the Department's] determination that [the Estate is] not entitled to a refund was not arbitrary and capricious.

(Appellants' App. Vol. I at 4 (citation omitted).) The Estate now appeals.[5]

## STANDARD OF REVIEW

■ This Court acts as a true appellate court when it reviews a probate court's determination regarding a refund of Indiana inheritance tax. *See* Ind.Code § 6–4.1–10–5 (2011). Accordingly, in this case, the Court must only consider those materials properly designated to the probate court in order to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. *See Kroger Co. v. Plonski*, 930 N.E.2d 1, 6 (Ind.2010); *In re Estate of Kalwitz*, 923 N.E.2d 982, 984 (Ind.Ct.App.2010) (citation omitted), *trans. denied. See also* Ind. Trial Rule 56(C).

■ The Estate, as the party appealing from the probate court's summary judgment decision, must demonstrate to this Court that the probate court's grant or denial of summary judgment was erroneous. *See Estate of Kalwitz*, 923 N.E.2d at 985 (citation omitted). When the material facts are not in dispute, as is the case here, this Court's review is limited to determining whether the probate court correctly applied the law to the undisputed facts. *See Hayes v. Trustees of Ind. Univ.*, 902 N.E.2d 303, 312 (Ind.Ct.App.2009) (citations omitted), *trans. denied.* Therefore, the Court will review all questions of law *de novo*, and will affirm the probate court's summary judgment decision when sus-

---

**5.** This Court heard the parties' oral arguments on November 19, 2010.

tained by any theory or basis in the record. *See id.* (citation omitted).

## DISCUSSION AND DECISION

The issue before the Court is whether the probate court erred in granting summary judgment in favor of the Department. The disposition of this issue, however, depends on the resolution of two other questions: whether the probate court erred in reconsidering the valuation of the subject property and, if not, whether it erred in disallowing the 30% discount. The Court will address each of these questions in turn.

### I.

Indiana Code § 6–4.1–10–4 provides that "[a] person who files a claim for the refund of inheritance ... tax may appeal any refund order which the department of state revenue enters with respect to his claim." IND.CODE § 6–4.1–10–4(a) (2006). "To initiate the appeal, the person must, within ninety (90) days after the department enters the order, file [with the appropriate probate court] a complaint in which the department is named as the defendant." I.C. § 6–4.1–10–4(a)–(b). When

such an appeal is initiated, "the probate court shall determine the amount of any tax refund due." Ind.Code § 6–4.1–10–5 (2006).

In its appeal to this Court, the Estate contends that the probate court erred in reconsidering the subject property's valuation for two interrelated reasons. (*See* Appellants' Br. at 9–22.) More specifically, the Estate explains that the probate court's Order of November 1, 2007, was not provisional under Indiana Code § 6–4.1–7–6.[6] (*See* Appellants' Br. at 10–17 (footnote added).) Therefore, the Department had but only two avenues by which it could challenge the subject property's valuation: a petition for rehearing under Indiana Code § 6–4.1–7–1[7] or a petition for reappraisal under Indiana Code § 6–4.1–7–2.[8] (*See* Appellants' Br. at 17–22 (footnotes added).) The Estate argues that because Department did not utilize either within the statutorily prescribed time period, its collection of the additional inheritance tax from the Estate was *per se* erroneous or illegal as a matter of law. Consequently, the Estate contends that the probate court erred in reconsidering

---

**6.** Indiana Code § 6–4.1–7–6, in part, provides that the Department:

> may accept a probate court's determination of the inheritance tax due as a result of a decedent's death as a provisional estimate of the inheritance tax imposed ... *[i]f the final determination of federal estate tax shows a change in the fair market value of the assets of a decedent's estate or a change in deductions[.]*

IND.CODE § 6–4.1–7–6 (2006) (emphasis added). The Estate explains that this statute is inapplicable because the decedent's gross estate did not exceed the federal estate tax exclusion of $2,000,000 and, as a result, it never filed a federal estate tax return. (*See* Appellants' Br. at 20 n.*.)

**7.** Under Indiana Code § 6–4.1–7–1, "[a] person who is dissatisfied with an inheritance tax determination made by a probate court with

respect to a resident decedent's estate may obtain a rehearing on the determination." Ind.Code § 6–4.1–7–1 (2006). The statute indicates that "the person must file a petition for rehearing with the probate court within one hundred twenty (120) days after the determination is made." I.C. § 6–4.1–7–1.

**8.** Indiana Code § 6–4.1–7–2 states that "[a] person who is dissatisfied with an appraisal approved by a probate court with respect to a resident decedent's estate may obtain a reappraisal of the property interest involved." IND.CODE § 6–4.1–7–2 (2006). The time for obtaining a reappraisal is limited to "one (1) year after the court enters an order determining the inheritance tax due as a result of the decedent's death. However, if the original appraisal is fraudulently or erroneously made, the person may file the reappraisal petition within two (2) years after the court enters the order." I.C. § 6–4.1–7–2.

the valuation of the subject property. The Court, however, disagrees.

The Department supervises the enforcement *and* collection of Indiana's death taxes. *See generally* IND.CODE § 6–4.1–12–6 (2006). Under this grant of authority, it may investigate any facts or circumstances relevant to the imposition of inheritance tax. *See* I.C. § 6–4.1–12–6(6). In conducting such an investigation, the Department concluded that the Estate had not paid the proper amount of tax; therefore, it requested the remittance of additional tax. When the Department sent its Notices to the Estate, first on December 31, 2007, and then on February 11, 2008, it was still well within the prescribed statutory period for filing a petition for reappraisal under Indiana Code § 6–4.1–7–2. (*See* Appellants' Br. at 18 (acknowledging that the Department had until November 1, 2009, to file such a petition).) At that point, the Estate was free to either pay the tax or not, and it elected to pay the tax in order to halt the accrual of statutory interest. (*See* Appellee's App. at 6.) Given that the Estate paid the tax in full, just two days after receiving the Department's second Notice, it would have been both improper and absurd for the Department to file a petition for reappraisal at that point.

■ These facts do not suggest that the Department exceeded its statutory authority or unilaterally overruled the November 1, 2007 Order of the probate court. Rather, they indicate that the Department was acting well within the statutory authority conferred to it by the General Assembly. *See, e.g.,* 7 DANIEL R. GORDON ET AL., HENRY'S INDIANA PROBATE LAW AND PRACTICE § 41.03[8], 75–76 (2010) (explaining that the Department routinely audits the estates of resident decedents *after* the probate court issues its order determining inheritance tax due, and may even subsequently enter into compromise agreements regarding an estate's inheritance tax liability). Thus, when the Estate appealed the Department's denial of its refund claim to the probate court, the probate court did not err in reconsidering the subject property's valuation because the Estate's entitlement to a refund ultimately depended on the resolution of that issue. *See* I.C. § 6–4.1–10–5 (directing the probate court to "determine the amount of any tax refund due" within the context of a claim for refund proceeding).

## II.

■ When a party moves for summary judgment, it may submit affidavits in support thereof. *See* T.R. 56(A). Indiana Trial Rule 56(E) states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." T.R. 56(E). The rule also requires that "[s]worn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit [ ] be attached thereto or served therewith." T.R. 56(E). The requirements of Trial Rule 56(E) are mandatory; thus, in considering the parties' motions for summary judgment, the probate court was required to disregard any inadmissible information contained in supporting or opposing affidavits. *See Hayes,* 902 N.E.2d at 309 (citation omitted).

The Estate claims that given the totality of the designated evidence, the probate court erred in concluding that the subject property did not qualify for the 30% discount. More specifically, the Estate asserts that its verified returns, in and of themselves, established the propriety of the discount because they were equivalent to affidavits providing testimony as to the fair market value of the subject property, and there was no evidence in the record

contradicting that testimony. (*See* Appellants' Br. at 23–26.)

On the other hand, the Department, maintains that the probate court did not err in disallowing the 30% discount because the personal representatives did not establish that they were qualified to determine whether the application of the 30% discount to the subject property was proper and, as a result, the Valuation of Decedent's Interest in Real Estate was unreliable. (*See* Appellee's Br. at 9–12.) The Department is correct.

 The Valuation of Decedent's Interest in Real Estate merely states that based on a "review" of federal estate tax law, application of the 30% discount to Neterer's undivided one-half interest in the subject property was proper. (*See* Appellants' App. Vol. II at 76.) In support thereof, the Estate submitted a copy of Section P–6117 of the RIA Federal Tax Coordinator 2nd, which cites numerous federal estate tax cases. (*See* Appellants' App. Vol. II at 78–81.) This Court's review of several of those cases, however, reveals that experts initially determined whether the application of marketability or control discounts was proper and then quantified the applicable discount.[9] Indiana's case law also presents a similar pattern: litigants typically present the analyses, quantifications, and testimony of experts when the propriety of adjustments due to lack of marketability or lack of control is at issue. *See, e.g., Koch v. James,* 616 N.E.2d 759, 762–63 (Ind.Ct. App.1993) (probate proceeding in which experts testified as to whether closely-held stock qualified for lack of marketability or lack of control discounts), *trans. denied; Indiana Dep't of Revenue v. Estate of Flanders,* 408 N.E.2d 172, 177–78 (Ind.Ct. App.1980) (inheritance tax proceeding in which expert valued decedent's undivided four-tenths interest in farm, applying discounts for a ten-year lease encumbrance and partition restriction).[10]

Here, Pollock's knowledge with respect to the valuation of the property generally, and the 30% discount specifically, is equivalent to that of a layperson, not an expert. (*See* Appellants' Br. at 24 (explaining that Pollock, like any lay witness, could provide testimony as to the value of real estate).) Moreover, while the Estate acknowledges the Valuation of Decedent's Interest in Real Estate was attached to its return, it has never indicated who actually prepared the two-page document. (*See* Appellants' Br. at 23 (stating only that "the Personal Representatives submitted a statement entitled Valuation of Decedent's Interest in Real Estate in which they explained their rationale for claiming fractional interest discounts for lack of marketability and lack of control").)

██ Furthermore, Pollock signed the verification clauses on each of the Estate's returns, which state: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules, statements, and instruments, and *to the best of my knowledge and belief,* it is true, correct[,] and complete." (Appellants' App. Vol. II at 19, 44 (emphasis

---

9. *See, e.g., Baird v. Comm'r,* 2001 WL 1150024 (U.S.Tax Ct.2001); *Stevens v. Comm'r,* 2000 WL 193615 (U.S.Tax Ct.2000); *Brocato v. Comm'r,* 1999 WL 1261490 (U.S.Tax Ct.1999); *Williams v. Comm'r,* 1998 WL 55347 (U.S.Tax Ct.1998); *LeFrak v. Comm'r,* 1993 WL 470956 (U.S.Tax Ct.1993).

10. *See also, e.g., Alexander v. Alexander,* 927 N.E.2d 926, 936–39 (Ind.Ct.App.2010), *trans. denied; Balicki v. Balicki,* 837 N.E.2d 532, 539 (Ind.Ct.App.2005), *trans. denied; Nowels v. Nowels,* 836 N.E.2d 481, 484–87 (Ind.Ct. App.2005); *Trost–Steffen v. Steffen,* 772 N.E.2d 500, 508–09 (Ind.Ct.App.2002), *trans. denied* (all dissolution proceedings in which experts (i.e., appraisers or certified public accountants) applied discounts for lack of marketability and lack of control in valuing a variety of property interests).

added).) As previously mentioned, an affidavit offered in support of a party's motion for summary judgment must be based on the affiant's personal knowledge and affirmatively show that the affiant is competent to testify to the matters stated therein. *See* T.R. 56(E). Pollock's attestation, however, does not establish that the information provided in the Valuation of Interest in Real Estate was based on her personal knowledge. *See Cunningham v. Mid State Bank*, 544 N.E.2d 530, 533 (Ind.Ct. App.1989) (explaining that affidavit made on information and belief is not based on affiant's personal knowledge), *trans. denied; accord Henderson v. Reynolds*, 168 Ind. 522, 81 N.E. 494, 495–96 (1907); *Cunningham v. Assocs. Capital Servs. Corp*, 421 N.E.2d 681, 682–83 (Ind.Ct.App.1981). The Estate also has not shown that Pollock was competent to render an opinion concerning the application and quantification of the 30% discount for lack of marketability and lack of control. *See also Celina Mut. Ins. Co. v. Forister*, 438 N.E.2d 1007, 1011–12 (Ind.Ct.App.1982) (explaining that affidavits made on an affiant's information and knowledge do not establish that the affiant is competent to testify to the matters stated therein).[11] Given the totality of the evidence, therefore, the Court cannot say that the probate court erred in disallowing the 30% discount.

### CONCLUSION

■ A court may not assign a fair market value to property if that value is outside the range of values supported by the evidence. *Balicki v. Balicki*, 837 N.E.2d 532, 539 (Ind.Ct.App.2005), *trans. denied.* In this case, the evidence demonstrates that the subject property, in its entirety, appraised at $855,250. (*See* Appellants' App. Vol. II at 22–29.) One-half of that value, which reflects Neterer's undivided one-half interest in the property, is $427,625. Consequently, the record evidence supports the probate court's conclusion as to the fair market value of the subject property. For the foregoing reasons, the Court AFFIRMS the probate court's grant of summary judgment in favor of the Department.

---

11. Indeed, affidavits made pursuant to an affiant's information and belief are "limited as to the oath they make [because] the affiant is not swearing [that] the facts as averred are true to the best of his personal knowledge; rather, he is swearing that he makes the averments in good faith upon his best information and his bona fide belief.'" *State, Dep't of Human Servs. v. Neilson*, 771 S.W.2d 128, 129 (Tenn. Ct.App.1989) (citation omitted)). *See also In re Kuser's Estate*, 132 N.J. Eq. 260, 26 A.2d 688, 694–95 (N.J.Prerog.Ct.1942) (providing that affidavits made on best information and belief, "without giving the source of the information or the grounds of belief, are mere hearsay and incompetent as evidence" for purposes of opening a decree for insolvency on the ground of newly discovered evidence) (citation omitted).